**POMERANTZ LLP**
Jeremy A. Lieberman (admitted *pro hac vice*)
Brenda Szydlo (admitted *pro hac vice*)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: 212-661-1100
Facsimile: 917-463-1044
Email: jalieberman@pomlaw.com
Email: bszydlo@pomlaw.com

*Counsel for Lead Plaintiff and*
*the Proposed Settlement Class*

[Additional counsel on signature page]

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM LIKAS, Individually and On Behalf of All Others Similarly Situated, <br><br>     Plaintiff, <br><br>     v. <br><br> CHINACACHE INTERNATIONAL HOLDINGS LTD., SONG WANG, GUANGSHENG MENG, FENGYE GAO, and JING AN, <br><br>     Defendants. | No.: 2:19-cv-06942-JWH-SS |

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

# TABLE OF CONTENTS

I.   INTRODUCTION ........................................................................................... 1

II.  SUMMARY OF THE LITIGATION AND SETTLEMENT ................................ 2

III. PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT IS
     APPROPRIATE ........................................................................................... 3

A. The Court Should Certify the Settlement Class for Settlement Purposes Only..... 3

B. The Ninth Circuit and Public Policy Strongly Favor Settlement ........................... 9

C. The Proposed Settlement is Fair, Adequate, and Reasonable .............................. 11

   1.   The Settlement Resulted from Serious, Informed, Non-Collusive Negotiations
        Between Experienced Counsel ........................................................... 12

   2.   The Settlement Has No Obvious Deficiencies and Falls Within the Range of
        Possible Approval .............................................................................. 14

   3.   The Settlement Does Not Grant Preferential Treatment to Any Settlement
        Class Member .................................................................................... 16

D. The Court Should Preliminarily Approve the Plan of Allocation........................ 17

IV. THE COURT SHOULD APPROVE THE PROPOSED NOTICE
    PROCEDURES ........................................................................................... 18

A. Notice by Direct Mail and Publication Is Appropriate ....................................... 18

B. The Proposed Form of Notice Adequately Informs Settlement Class Members of
   Their Rights in This Litigation ............................................................................ 20

V.  PROPOSED SCHEDULE OF EVENTS ............................................................. 21

VI. CONCLUSION ............................................................................................... 22

PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF SETTLEMENT

# TABLE OF AUTHORITIES

**Pages**

## Cases

*Amchem Prod., Inc. v. Windsor*,
  521 U.S. 591 (1997).........................................................................................3, 4, 8

*Blackie v. Barrack*,
  524 F.2d 891 (9th Cir. 1975) ......................................................................................9

*Churchill Vill., L.L.C. v. Gen. Elec.*,
  361 F.3d 566 (9th Cir. 2004) ....................................................................................11

*Class Plaintiffs v. City of Seattle*,
  955 F.2d 1268 (9th Cir. 1992) ..................................................................................10

*Ellis v. Naval Air Rework Facility*,
  87 F.R.D. 15 (N.D. Cal. 1980) ..................................................................................14

*Goldstein v. Tongxin Int'l Ltd.*,
  No. 2:11-cv-00348-JAK(PJWx), 2012 WL 13006188 (C.D. Cal. May 3, 2012) ....19

*Harris v. Vector Mktg. Corp.*,
  No. C-08-5198 EMC, 2011 WL 1627973 (N.D. Cal. Apr. 29, 2011) ...................14

*Hartless v. Clorox Co.*,
  273 F.R.D. 630 (S.D. Cal. 2011) ...............................................................................14

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
  689 F.3d 229 (2d Cir. 2012) ........................................................................................8

*In re China Med. Corp. Sec. Litig.*,
  No. 8:11-1061-JST (ANX), 2013 WL 12126754 (C.D. Cal. May 16, 2013) ..7, 9, 13

*In re Cooper Companies Inc. Sec. Litig.*,
  254 F.R.D. 628 (C.D. Cal. 2009).................................................................................7

*In re Cooper Cos. Inc. Sec. Litig.*,
    No. SACV 06–00169–CJC(RNBx), 2010 WL 11519148 (C.D. Cal. 2010) ..........10

*In re Heritage Bond Litig.*,
    No. 02-ML-1475 DT, 2005 WL 1594403 (C.D. Cal. June 10, 2005).............1, 9, 15

*In re Hot Topic, Inc. Sec. Litig.*,
    No. CV 13-02939 SJO (JCx), 2015 WL 12776582 (C.D. Cal. June 30, 2015) .......19

*In re Immune Response Sec. Litig.*,
    No. 01CV1237 J (WMC), 2007 WL 9777749 (S.D. Cal. Mar. 14, 2007) ..............10

*In re Omnivision Techs., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2008).........................................1, 15, 18

*In re Oracle Sec. Litig.*,
    No. C-90-0931-VRW, 1994 WL 502054 (N.D. Cal. June 18, 1994) .....................17

*In re Portal Software, Inc. Sec. Litig.*,
    No. C-03-5138 VRW, 2007 WL 4171201 (N.D. Cal. Nov. 26, 2007) ...................19

*In re Silver Wheaton Corp. Sec. Litig.*,
    No. 2:15-cv-05146-CAS (JEMx), 2017 WL 2039171 (C.D. Cal. May 11, 2017).5, 6

*In re Syncor ERISA Litig.*,
    516 F.3d 1095 (9th Cir. 2008) ...................................................9, 10

*In re Zynga Inc. Sec. Litig.*,
    No. 12-CV-04007-JSC, 2015 WL 6471171 (N.D. Cal. Oct. 27, 2015) ...........passim

*Middlesex Cty. Ret. Sys. v. Semtech Corp.*,
    No. CV 07-7114 CAS (FMOx), 2010 WL 11507255 (C.D. Cal. Aug. 27, 2010) .......
    ......................................................................5, 6, 7

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004).....................................................12, 14

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*,
    688 F.2d 615 (9th Cir. 1982) .......................................................10, 15

PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF SETTLEMENT

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ................................................................. 18

*Rosenburg v. I.B.M.*,
    No. CV06-00430PJH, 2007 WL 128232 (N.D. Cal. Jan. 11, 2007) ................. 17, 18

*Sandoval v. Tharaldson Employee Mgmt., Inc.*,
    No. EDCV 08-482-VAP(OP), 2010 WL 2486346 (C.D. Cal. June 15, 2010) ........ 18

*Schleicher v. Wendt*,
    618 F.3d 679 (7th Cir. 2010) ...................................................................... 7

*Silber v. Mabon*,
    18 F.3d 1449 (9th Cir. 1994) ................................................................... 19

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ............................................................... 5, 11

*Thomas v. MagnaChip Semiconductor Corp.*,
    No. 14-CV-01160-JST, 2017 WL 4750628 (N.D. Cal. Oct. 20, 2017) ................. 17

*Torrisi v. Tucson Elec. Power Co.*,
    8 F.3d 1370 (9th Cir. 1993) ..................................................................... 11

*Util. Reform Project v. Bonneville Power Admin.*,
    869 F.2d 437 (9th Cir. 1989) ................................................................... 10

*Vinh Nguyen v. Radient Pharm. Corp.*,
    287 F.R.D. 563 (C.D. Cal. 2012) ................................................................ 5

*Vinh Nguyen v. Radient Pharm. Corp.*,
    No. SACV 11-00406 DOC, 2014 WL 1802293 (C.D. Cal. May 6, 2014) .. 16, 17, 18

*West v. Circle K Stores, Inc.*,
    No. CIV. S-04-0438 WBS GGH, 2006 WL 1652598 (E.D. Cal. June 13, 2006) 1, 14

**Statutes**

15 U.S.C. § 78u-4(a)(7) ................................................................................ 20

**Rules**

Fed. R. Civ. P. 23 .................................................................................passim

**Other Authorities**

William B. Rubenstein, 4 *Newberg on Class Actions* § 13:18 (5th ed. 2020). .............3

William B. Rubenstein, 3 *Newberg on Class Actions* § 8:8 (5th ed. 2020) ...............19

PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF SETTLEMENT

# I.  INTRODUCTION

Lead Plaintiff The ChinaCache Investor Group (consisting of plaintiffs Jingwen Zhang and Bingyang Cheng) ("Plaintiff"), individually and on behalf of all other persons similarly situated, respectfully submits this memorandum in support of Plaintiff's unopposed motion seeking: (i) Preliminary Approval of the Proposed Settlement (the "Settlement"); (ii) conditional certification of the Settlement Class; (iii) approval of the Notice to the Settlement Class; and (iv) a date for a Settlement Hearing and deadlines for mailing and publication of the Notice, the filing of Settlement Class Member objections, the filing of Settlement Class Member opt-out notices, the filing of Plaintiff's motion for final approval of the Settlement, and the filing of Lead Counsel's application for attorneys' fees and expenses (which may include an application for reimbursement of the reasonable costs and expenses incurred by Plaintiff).[1]

Plaintiff and Defendants ChinaCache International Holdings Ltd. ("ChinaCache"), Jing An (together with ChinaCache, the "Settling Defendants") have agreed to settle this case for one million eight hundred thousand U.S. dollars ($1,800,000). The Settlement is a highly favorable result for Settlement Class members. Plaintiff estimates that the Settlement returns almost 41% of estimated damages (using the low end of damages models) or 9% (using the high end of damages models) – above settlements for similar securities class actions. *West v. Circle K Stores, Inc.*, No. CIV. S-04-0438 WBS GGH, 2006 WL 1652598, at *11 (E.D. Cal. June 13, 2006); *see also In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) (approving 6% recovery of maximum damages) (citing *In re Heritage Bond*

---

[1] All capitalized terms used herein have the meanings set forth and defined in the Stipulation and Agreement of Settlement (the "Stipulation"). A true and correct copy of the Stipulation and its exhibits (Exhibit A; Exhibits 1, 2 and 3 to Exhibit A; and Exhibit B) are altogether attached as Exhibit 1 to the accompanying Declaration of Brenda Szydlo in Support of Preliminary Approval of Class Action Settlement (the "Szydlo Decl.").

PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF SETTLEMENT

*Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at *8-9 (C.D. Cal. June 10, 2005) (average recovery between 2% to 3% of maximum damages)).

## II.    SUMMARY OF THE LITIGATION AND SETTLEMENT

On June 12, 2019, a class action complaint was filed in U.S. District Court for the Southern District of New York, styled *Sun v. ChinaCache International Holdings Ltd. et al.*, Case No. 1:19-cv-05485 (S.D.N.Y. Jun 12, 2019) (the "New York Action"). On August 9, 2019, the initial complaint in this action was filed in the United States District Court for the Central District of California, styled *Likas v. ChinaCache International Holdings Ltd. et al.*, 2:19-cv-06942. On August 29, 2019, the plaintiff in the New York Action filed a voluntary dismissal. (*See* New York Action, Dkt. No. 15). On October 2, 2019, the Honorable Fernando M. Olguin appointed The ChinaCache Investor Group as Lead Plaintiff for the Action and approved Lead Plaintiff's selection of Pomerantz LLP as Lead Counsel. (Dkt. No. 25).

On April 24, 2020, the parties jointly submitted a stipulation informing the Court of an upcoming mediation. (Dkt. No. 42). Beginning in April 2020, the Parties engaged in arm's-length settlement negotiations for months. On June 18, 2020, Lead Counsel and Defendants' Counsel participated in a full-day virtual mediation session before a highly experienced third-party mediator, David Murphy of Phillips ADR (the "Mediator"). The Parties were unable to reach an agreement to settle the Action during the mediation. The Parties, however, continued their arm's-length settlement negotiation afterwards while they concurrently proceeded with this Action.

On July 9, 2020, Plaintiff filed its Amended Complaint (the "Amended Complaint") asserting claims against all Defendants under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, and against the Individual Defendants under Section 20(a) of the Exchange Act. (Dkt. No. 44). The Amended Complaint alleged that throughout the Class Period, Defendants made materially false and misleading statements and failed to disclose that ChinaCache and Defendant Song Wang ("Wang")—the Company's Chief Executive

Officer ("CEO") and Chairman of the Board of Directors ("Chairman")—were involved in a bribery scandal. The Amended Complaint alleged that the foregoing conduct placed ChinaCache and Wang at a heightened risk of criminal investigation and enforcement action by government authorities, which would foreseeably disrupt the Company's operations. The Amended Complaint further alleged that this resulted in the criminal investigations of Wang and the Company, the arrest of Wang, and the indictment of the Company in China. On October 6, 2020, Settling Defendants filed the Motion to Dismiss the Amended Complaint. (Dkt. No. 67).

With the Motion to Dismiss pending, on October 28, 2020, the Parties reached an agreement in principle to settle the Action. The agreement was memorialized in a memorandum of understanding (the "Memorandum of Understanding") which was fully executed that same day. The Memorandum of Understanding sets forth, among other things, the Parties' agreement to fully and finally settle and release all claims that were asserted or could have been asserted in the Action in return for a cash payment by or on behalf of Defendants of $1,800,000 for the benefit of the Settlement Class. The Memorandum of Understanding was formalized in the Stipulation that was executed on December 15, 2020.

## III. PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT IS APPROPRIATE

### A. The Court Should Certify the Settlement Class for Settlement Purposes Only

In preliminarily approving a proposed settlement, the Court should first consider whether to conditionally certify a settlement class. *See Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).[2] "The standards for [class] certification are laxer at settlement" than for litigation purposes. William B. Rubenstein, 4 *Newberg on Class Actions* § 13:18 (5th ed. 2020).

---

[2] Emphasis is added and internal citations and quotations are omitted unless otherwise indicated.

Certification of a settlement class is appropriate where the proposed class and proposed class representative meet the four requirements of Rule 23(a): (1) "numerosity" – the class is so numerous that joinder of all members is impracticable, (2) "commonality" – there are questions of law or fact common to the class, (3) "typicality" – the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) "adequacy" – the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). In addition, certification of a class action for damages requires a showing, under Rule 23(b)(3), that questions of law or fact common to the members of the class predominate over individual issues of law or fact ("predominance") and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy ("superiority"). Fed. R. Civ. P. 23(b)(3). In certifying the Settlement Class, however, the Court is not required to determine whether the action, if tried, would present intractable management problems, "for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620; *see also* Fed. R. Civ. P. 23(b)(3)(D).

Here, the proposed Settlement Class, to which the Settlement Parties have stipulated, consists of: "all persons or entities who or which purchased or otherwise acquired ChinaCache Securities between April 10, 2015 and May 17, 2019, inclusive (the "Settlement Class Period") and were allegedly damaged thereby."[3] Stipulation ¶1.ss. The proposed Settlement Class meets all of the requirements of Rule 23(a) and satisfies the requirements of Rule 23(b)(3).

---

[3] Excluded from the Settlement Class are Defendants, the present and former Officers and directors of ChinaCache and any subsidiary thereof, and the Immediate Family members, legal representatives, heirs, successors or assigns of such excluded persons and any entity in which any such excluded person has or had a controlling interest during the Settlement Class Period. Also excluded from the Settlement Class are any persons and entities who or which exclude themselves by submitting a valid and timely request for exclusion and persons with no compensable losses.

**Numerosity**: "As a general rule ... classes of 40 or more are numerous enough." *In re Silver Wheaton Corp. Sec. Litig.*, No. 2:15-cv-05146-CAS (JEMx), 2017 WL 2039171, at *6 (C.D. Cal. May 11, 2017).Where it is obvious that the number of class members far exceeds forty, as in cases like this Action involving "nationally traded stocks," where "the exact size of the proposed class is unknown, but general knowledge and common sense indicate it is large, the numerosity requirement is satisfied." *Vinh Nguyen v. Radient Pharm. Corp.*, 287 F.R.D. 563, 569 (C.D. Cal. 2012); *see also Silver Wheaton*, 2017 WL 2039171, at *6. The Court should similarly find that the Settlement Class satisfies numerosity.

**Commonality**: Rule 23(a)'s "commonality requirement is generally construed liberally." *Middlesex Cty. Ret. Sys. v. Semtech Corp.*, No. CV 07-7114 CAS (FMOx), 2010 WL 11507255, at *3 (C.D. Cal. Aug. 27, 2010). In general, a few factual variations among the class grievances will not defeat commonality so long as class members' claims arise from "shared legal issues" or "a common core of salient facts." *Staton v. Boeing Co.*, 327 F.3d 938, 953 (9th Cir. 2003). Even one significant common issue of law or fact may suffice to show commonality. *Semtech*, 2010 WL 11507255, at *3. There are multiple common issues in this case, as listed in the Amended Complaint, including: whether ChinaCache and Wang bribed/were bribing a government official in connection with the 2014 Sales/Leaseback Deal between ChinaCache and the BFSMC with respect to the buildings at the Internet Data Center; whether the criminal investigations of both Wang and the Company, the arrest of Wang, and criminal indictment of the Company for bribery would foreseeably disrupt the Company's operations; and whether the bribes caused the Company to be incapable of producing accurate financial statements. The Settlement Class easily satisfies the commonality requirement. *See id.* ¶ 94.

**Typicality**: Rule 23(a)'s typicality requirement ensures that the interests of the representative plaintiff align with those of the Class. *Silver Wheaton*, 2017 WL 2039171, at *7. Courts in this District has found that "typicality is satisfied if the

plaintiff's claims are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Id.* Where plaintiffs allege that they purchased the security in question and suffered damages as a result of defendants' misstatements or omissions, their claims are typical of the class. *Id.* Plaintiff's claims are substantially similar to those of the Settlement Class. Plaintiff purchased ChinaCache ADRs during the Settlement Class Period, holding shares up to or through the end of the Settlement Class Period and suffering significant losses. *See* Dkt. No. 9-2 (Plaintiff's PSLRA certifications). No evidence exists that renders Plaintiff' claims atypical of those of the Settlement Class, nor does any evidence show that a unique defense applies to Plaintiff's claims. *See Semtech*, 2010 WL 11507255, at *4-5 (finding typicality was met despite certain unique factors). Plaintiff satisfies the typicality requirement.

**Adequacy**: Representative plaintiffs are adequate if they have no conflicts of interest with the class and show that they and their counsel will prosecute the action vigorously on behalf of the class. *Semtech*, 2010 WL 11507255, at *5. In this case, Plaintiff has submitted declarations consistent with the PSLRA, indicating that Jingwen Zhang and Bingyang Cheng reviewed the complaint, that they are willing to represent the Class, and that they will accept no payment for serving as a representative Plaintiff beyond their *pro rata* shares of any recovery. Dkt. No. 9-2. No evidence exists of any conflict of interests with the Settlement Class. *Silver Wheaton*, 2017 WL 2039171, at *7-8.

As to the adequacy of Plaintiff's counsel, the Court must consider (1) the work counsel has done in identifying or investigating potential claims; (2) counsel's experience in handling class actions; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A). Lead Counsel Pomerantz LLP has extensive experience and a stellar reputation in class actions and securities litigation. *See* Szydlo Decl., Ex. 2. Pomerantz has been appointed as lead or co-lead counsel in many complex securities class actions, and has recovered substantial amounts of money for clients and class members. Based

on Pomerantz's experience, and their work in skillfully litigating the matter through the pleadings stage thus far, the Court should conclude that Pomerantz has satisfied the adequacy requirements under Rule 23(g). *See In re China Med. Corp. Sec. Litig.*, No. 8:11-1061-JST (ANX), 2013 WL 12126754, at \*4 (C.D. Cal. May 16, 2013). Lead Counsel will continue to commit adequate resources to ensure that the Settlement Class is properly represented in this Action as Class Counsel.[4]

**Predominance**: A class satisfies the predominance requirements when issues common to the class predominate over issues that are particular to individual members. *Semtech*, 2010 WL 11507255, at \*7 (citing Fed. R. Civ. P. 23(b)(3)). No question exists that issues surrounding Defendants' alleged conduct, such as whether their statements were materially false, whether they acted with the requisite scienter, and whether their conduct caused damages to Plaintiff and the Settlement Class, are common to each member of the Settlement Class. The common resolution of those issues supports predominance. *Id.* Indeed, Defendants' alleged misrepresentations during the Settlement Class Period "affect[ed] [all] investors alike" and proof of falsity, materiality, scienter, and loss causation will "be made on a class-wide basis." *Schleicher v. Wendt*, 618 F.3d 679, 682, 685, 687 (7th Cir. 2010). Thus, common questions of law and fact predominate. *In re Cooper Companies Inc. Sec. Litig.*, 254 F.R.D. 628, 641 (C.D. Cal. 2009) ("The common questions of whether misrepresentations were made and whether Defendants had the requisite scienter predominate over any individual questions of reliance and damages."). While the amount of damages may differ among members of the Settlement Class, Plaintiff contends that liability and the proper measure of damages can be determined on a class-wide basis. *Id.* at 640 ("[T]he critical questions of what Defendants said, what they knew, what they withheld, and with what intent they acted, are central to all class

---

[4] Defendants and their counsel take no position as to the adequacy of Plaintiff's counsel, but do not oppose the relief requested in this motion.

members' claims.... Issues such as certain members' damages, timing of sales and purchases, or standing to file suit, do not have the same primacy.").

Plaintiff need not prove their entitlement to a fraud-on-the-market presumption to merit certification for purposes of the Settlement only. The issue of reliance is an element of Plaintiff's Section 10(b) claim that is required to be proven at trial, and the Supreme Court has held that, when "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. R. Civ. P. 23(b)(3)(D), for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620. Thus, as the Second Circuit found, "a settlement class ordinarily need not demonstrate that the fraud-on-the-market presumption applies to its claims in order to satisfy the predominance requirement." *In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 241 (2d Cir. 2012) (citing *Amchem*, 521 U.S. at 620). "Where a Section 10(b) settlement class would otherwise satisfy the predominance requirement, the fact that the plaintiff class is unable to invoke the [fraud-on-the-market] presumption, without more, is no obstacle to certification." *Id.* at 243. Moreover, demonstrating the Settlement Class's entitlement to the fraud-on-the-market presumption would typically require Plaintiff to retain an economics expert, which would require a significant outlay of resources that might otherwise go to the Settlement Class. Hiring an expert to design and perform event studies solely for certification for settlement purposes would impose an unnecessary cost, particularly relative to the size of the Settlement and estimated damages in this Action.

For these reasons, the Court should find Plaintiff has satisfied Rule 23(b)(3)'s predominance requirement. *Id.*

**Superiority**: Rule 23(b)(3) also requires a finding that the class action mechanism is a superior method of adjudicating Plaintiff's and the Settlement Class members' claims. If Plaintiff and the Settlement Class members "each brought individual actions, they would each be required to prove the same wrongdoing to establish Defendants' liability. Different courts could interpret the claims different[ly],

resulting in inconsistent rulings or unfair results." *In re Zynga Inc. Sec. Litig.*, No. 12-CV-04007-JSC, 2015 WL 6471171, at *7 (N.D. Cal. Oct. 27, 2015). Further, "where the damages each plaintiff suffered are not that great, this factor weighs in favor of certifying a class action." *In re China Med. Corp. Sec. Litig.*, No. 8:11–1061–JST (ANx), 2013 WL 12126754, at *5 (C.D. Cal May 16, 2013). Here, litigation costs would likely "dwarf potential recovery" if each Settlement Class Member litigated individually. *Id.* By avoiding the possibility of repetitious litigation and efficiently resolving the claims of the entire Settlement Class at once, this Action satisfies the superiority requirement.

The Ninth Circuit has long recognized that class actions are a superior way to pursue securities fraud actions. "The availability of the class action to redress such frauds has been consistently upheld, in large part because of the substantial role that the deterrent effect of class actions plays in accomplishing the objectives of the securities laws." *Blackie v. Barrack*, 524 F.2d 891, 903 (9th Cir. 1975). "[I]t is well recognized that Rule 23 is to be liberally construed in a securities fraud context because class actions are particularly effective in serving as private policing weapons against corporate wrongdoing." *Id.*

This Action satisfies each of the requirements of Rules 23(a) and 23(b)(3) and therefore the Court will likely be able to certify the Settlement Class for purposes of this Settlement.

**B.     The Ninth Circuit and Public Policy Strongly Favor Settlement**

Federal Rule of Civil Procedure 23(e) requires judicial approval for any proposed class action settlement. Whether to approve a proposed settlement falls within the district court's discretion, which should be exercised in the context of public policy strongly favoring the pretrial settlement of class action lawsuits. *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008) ("[T]here is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned"); *In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at *2 (C.D. Cal.

June 10, 2005) (same, quoting *Syncor*, 516 F.3d at 1101); *see also Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *accord Util. Reform Project v. Bonneville Power Admin.*, 869 F.2d 437, 443 (9th Cir. 1989); *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982) ("voluntary conciliation and settlement are the preferred means of dispute resolution").

In considering whether to grant preliminary approval of a class action settlement, courts make a preliminary evaluation of the fairness of the settlement prior to issuing notice to the class and prior to holding a final approval hearing. Notably, Rule 23(e) was modified with respect to the preliminary approval of class action settlements, effective December 1, 2018.[5] Rule 23(e) now requires the Court to examine whether it is likely to grant final approval of the settlement. Specifically, the new Rule requires Plaintiff to demonstrate that the Court will "likely be able to (i) approve the proposal [as fair, reasonable, and adequate] under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the propos[ed settlement]." Fed. R. Civ. P. 23(e)(1)(B). However, "[a]s some of the factors … cannot be fully assessed until the fairness hearing, a full fairness analysis is unnecessary at this stage." *In re Cooper Cos. Inc. Sec. Litig.*, No. SACV 06–00169–CJC(RNBx), 2010 WL 11519148, at *2 (C.D. Cal. 2010) (preliminarily approving class action). At the preliminary approval stage, the Court need only determine "whether the proposed [settlement] discloses grounds to doubt its fairness or other obvious deficiencies." *In re Immune Response Sec. Litig.*, No. 01CV1237 J (WMC), 2007 WL 9777749, at *4 (S.D. Cal. Mar. 14, 2007); *see also In re Immune Response Sec. Litig.*, No. 01CV1237 J (WMc), 2007 WL 9777749, at *4 (S.D. Cal. Mar. 14, 2007) (at the preliminary approval stage, "the Court need only determine whether the proposed settlement appears on its face to be fair. Only after a

---

[5] The new Rule 23(e) governs "insofar as just and practicable, all proceedings then pending." Order of the U.S. Supreme Court Amending the Federal Rules of Civil Procedure (Apr. 26, 2018), *available at* https://www.supremecourt.gov/orders/courtorders/frcv18_5924.pdf.

fairness hearing will the Court be adequately equipped to address the final approval standard").

Plaintiff requests at this stage only that the Court take the first step in the settlement approval process by granting preliminary approval of the proposed Settlement. The proposed Settlement, which provides $1,800,000 in cash for distribution to eligible Settlement Class Members before deduction of Court-awarded attorneys' fees and other expenses, confers a valuable benefit to the Settlement Class. Given the limited maximum potential damages in this Action and the fact that an early resolution prevented the further depletion of the Company's limited financial resources, the Settlement represents a reasonable resolution of the Action and eliminates the risk that the Settlement Class might recover less or nothing at all. A preview of the factors considered by courts in granting final approval of class action settlements demonstrates that this Settlement is well within the range of possible approval.[6] The Court will likely be able to approve the Settlement as fair, reasonable and adequate under Rule 23(e)(2).

### C.  The Proposed Settlement is Fair, Adequate, and Reasonable

Rule 23(e) requires the court to determine whether a proposed settlement is "fundamentally fair, adequate, and reasonable." *Boeing*, 327 F.3d at 959. To make this determination, the court must consider a number of factors. *See id.* Given that some of these factors cannot be fully assessed until the Court conducts a final approval hearing, "a full fairness analysis is unnecessary at this stage." *Zynga*, 2015 WL 6471171, at *6.

---

[6] At the final approval stage, the Court will answer the ultimate question of whether the Settlement is fair, reasonable and adequate. In making that determination, the Court reviews the following factors: (1) the strength of Plaintiff' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; and (7) the reaction of class members to the proposed settlement. *See Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993).

Instead, "the settlement need only be potentially fair, as the Court will make a final determination of its adequacy at the hearing on Final Approval, after such time as any party has had a chance to object and/or opt out." *Id.* At this juncture, preliminary approval of a settlement is appropriate when: (1) "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations," (2) "has no obvious deficiencies," (3) "does not improperly grant preferential treatment to class representatives or segments of the class," and (4) "falls within the range of possible approval." *Id.* Since each of these factors weighs in favor of preliminary approval of the Settlement, the Court should preliminarily approve the Settlement.

    1.    The Settlement Resulted from Serious, Informed, Non-Collusive Negotiations Between Experienced Counsel

The negotiations between Lead Counsel and Settling Defendants' counsel that produced the Settlement were serious and informed. Lead Counsel conducted a thorough review of ChinaCache's SEC filings and publicly available information concerning the Company, leading Plaintiff to file a detailed Amended Complaint setting out a straightforward theory of securities fraud. At the same time, Lead Counsel kept apprised of ChinaCache's evolving financial situation – a key factor in settlement negotiations given the Company's limited financial resources. Through the months of settlement negotiations, Plaintiff and Lead Counsel acquired "fulsome understandings" of the parties' respective positions on the legal and factual issues in the case. *See Zynga*, 2015 WL 6471171, at *9.

Plaintiff and Lead Counsel also understand the substantial risks involved in prosecuting this action further. Courts must "consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004). Indeed, courts in this district have recognized that it is "proper to take the bird in hand instead of a prospective flock in the bush." *Id.*

While Plaintiff and Lead Counsel believe that the Amended Complaint is strong, success before the Court is in no way assured. Even if Plaintiff defeats the motion to dismiss, it would still need to clear the substantial hurdle of seeking class certification and engage in lengthy fact discovery. Also ever-present is the risk that Plaintiff's claims may be defeated at summary judgment or trial, or on appeal. Even if Plaintiff were to prevail at every stage through years of hard-fought litigation, it would still face the risk that the Company may not survive long enough to satisfy any potential judgment that Plaintiff might win. In short, Plaintiff has "demonstrated that there is a substantial risk in litigating this case further," and this Court should find that the negotiations between Lead Counsel and Defendants' counsel that produced the Settlement were "serious" and "informed." *Zynga*, 2015 WL 6471171, at *9. Throughout the litigation, experienced counsel have represented Plaintiff and Settling Defendants. As a result, the Parties' settlement negotiations were protracted and adversarial—in no way collusive.

In determining whether the Settlement is the product of collusion, the Court will "look for explicit collusion and more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *China Med.*, 2013 WL 12126754, at *6 (finding no collusion). Such signs may include: (1) "when counsel receive a disproportionate distribution of the settlement," (2) "when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds," and (3) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." *Id.*

There are no signs of collusion here. Lead Counsel's attorneys' fees are to be determined by the Court and awarded from the Settlement Fund. Stipulation ¶ 15. This precludes a finding that there is any "clear sailing" agreement providing that counsel fees are to be paid separate and apart from class funds. *China Med.*, 2013 WL 12126754, at *6, *8. The Settlement also provides for the distribution of any balance

remaining in the Net Settlement Fund, if economically feasible, "to Authorized Claimants who have cashed their initial distributions and who would receive at least $10.00 from such re-distribution". Stipulation, Ex. A-1 (Notice) ¶ 61. Indeed, the Settlement was achieved only after intense arm's-length negotiations, including nine months of correspondence and discussions.

Courts also recognize that the opinion of experienced counsel supporting the settlement after vigorous arm's-length negotiations is entitled to considerable weight. *See, e.g., Nat'l Rural Telecomms.*, 221 F.R.D. at 528 ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation"); *Hartless v. Clorox Co.*, 273 F.R.D. 630, 641 (S.D. Cal. 2011) *aff'd in part*, 473 F. App'x 716 (9th Cir. 2012) (finding belief of counsel that the proposed settlement represented a beneficial result for the class to be a compelling factor in approving settlement); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980) ("[T]he fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight"), *aff'd*, 661 F.2d 939 (9th Cir. 1981). Here, Lead Counsel recommends that the Court approve the Settlement, which represents a great outcome for the Settlement Class Members.

> ## 2. The Settlement Has No Obvious Deficiencies and Falls Within the Range of Possible Approval

There is also no evidence or indication of any "obvious deficiencies" with the Settlement, such as "indications of a collusive negotiation, unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorneys." *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2011 WL 1627973, at *7 (N.D. Cal. Apr. 29, 2011).

"[A]t this preliminary approval stage, the court need only determine whether the proposed settlement is within the range of possible approval." *Circle K Stores*, 2006 WL 1652598, at *11. Under the Settlement, Defendants will pay $1,800,000, which represents almost 41% of the approximately $4,400,000 million in estimated aggregate

damages under a conservative damages analysis, and 9% of the approximately $19,800,000 million in estimated damages under an aggressive (but more challenging to prove) damages analysis. As a percentage of estimated damages, the Settlement Amount is well above the median percentage of the recovery level for investor losses in securities class action settlements. *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) (approving 6% recovery of maximum damages) (citing *Heritage*, 2005 WL 1594403, at *8–9 (average recovery between 2% to 3% of maximum damages)).

Ultimately, an evaluation of the benefits of settlement must be tempered by a recognition that any compromise involves concessions on the part of the settling parties. Indeed, "the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes." *Officers for Justice*, 688 F.2d at 624. Plaintiff submits that the proposed Settlement reflects concessions by both Defendants and Plaintiff that are reasonable and fair, and that the Settlement is in the best interests of the Settlement Class. This case presents a number of complex issues, and the risks and costs of further litigating the case through class certification, summary judgment, trial, and appeal are significant. Obtaining a judgment would likely take years of litigation, and there is a substantial risk that the Company may no longer exist. Accordingly, the Settlement Amount presents a substantial benefit to the Settlement Class and weighs in favor of granting preliminary approval.

Finally, this factor takes into account "any agreement made in connection with the propos[ed]" settlement. Fed. R. Civ. P. 23(e)(2)(C)(iv) and (e)(3). The only such agreement here, assuming it falls within that rule, is the Parties' confidential Supplemental Agreement regarding requests for exclusion ("Supplemental Agreement"). The Supplemental Agreement would permit Settling Defendants to terminate the Settlement if the number of Class Members who request exclusion in connection with the Settlement reaches a certain threshold. Such agreements are standard provisions in securities class actions and ensure that Defendants are receiving

finality, without affecting Class Members' rights under, or altering the substance or fairness of, the Settlement. Should the Court wish to review the Supplemental Agreement, the Parties are prepared to present it, and would respectfully request that they be permitted to do so under seal, as litigants and courts typically treat such agreements as confidential.

> ### 3. The Settlement Does Not Grant Preferential Treatment to Any Settlement Class Member

The Court must also examine "whether the Settlement provides preferential treatment to any class member." *Zynga*, 2015 WL 6471171, at \*10. "A settlement in a securities class action case can be reasonable if it fairly treats class members by awarding a *pro rata* share to every Authorized Claimant, but also sensibly makes interclass distinctions based upon, *inter alia*, the relative strengths and weaknesses of class members' individual claims and the timing of purchases of the securities at issue." *Vinh Nguyen v. Radient Pharm. Corp.*, No. SACV 11-00406 DOC, 2014 WL 1802293, at \*5 (C.D. Cal. May 6, 2014). "[C]ourts recognize that an allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent counsel." *Id.*

The Settlement here is "reasonable, fair, and adequate." Like the plan of allocation in the *Nguyen* settlement, the proposed plan of allocation here "uses a Recognized Loss value calculated for each share," determined by "when that share was purchased and sold." *Id.* The *Nguyen* settlement provided that "[t]he settlement fund will be distributed on a *pro rata* basis according to each class members' Recognized Loss." *Id.* Similarly, the plan of allocation proposed here states that "[t]he Net Settlement Fund will be distributed to Authorized Claimants on a *pro rata* basis based on the relative size of their Recognized Claims." Stipulation, Ex. A-1 (Notice) ¶ 54. It provides for a calculation of the Recognized Loss based on whether the ChinaCache ADRs holdings were: (i) sold during the Settlement Class Period, (b) sold during the PSLRA's statutory 90-day look-back period, or (c) retained at the end of trading after

the end of the 90-day look-back period. *Id.* The formula for the proposed plan of allocation, like the plan in *Nguyen*, thus has a "reasonable, rational basis" underlying its provisions and does not grant preferential treatment to any Settlement Class member. *Nguyen*, 2014 WL 1802293, at *5.

**D.  The Court Should Preliminarily Approve the Plan of Allocation**

The Court should also preliminarily approve the proposed Plan of Allocation, which is detailed in the Notice to be mailed to Settlement Class Members. Stipulation, Ex. A-1 ¶¶ 45-49. A court should preliminarily approve a proposed plan of allocation so long as "the proposed plan is rationally related to the relative strengths and weaknesses of the respective claims asserted." *Rosenburg v. I.B.M.*, No. CV06-00430PJH, 2007 WL 128232, at *5 (N.D. Cal. Jan. 11, 2007). *See also In re Oracle Sec. Litig.*, No. C-90-0931-VRW, 1994 WL 502054, at *1 (N.D. Cal. June 18, 1994) (reasonable to allocate more to class members with stronger claims); *Thomas v. MagnaChip Semiconductor Corp.*, No. 14-CV-01160-JST, 2017 WL 4750628, at *8 (N.D. Cal. Oct. 20, 2017) (plan of allocation providing for *pro rata* distribution tailored to the time frame when each investor bought, sold, or continued to hold stock was fair and reasonable because it "takes into account the fact that investors were informed of the full scope of the fraudulent scheme through a series of corrective disclosures."). The proposed plan of allocation here meets that standard.

Lead Counsel developed the proposed plan of allocation in consultation with Plaintiff's damages expert. The plan provides a fair and reasonable method for the allocation of the Net Settlement Fund to Authorized Claimants. Each Authorized Claimant shall receive their *pro rata* share of the Net Settlement Fund based upon their Recognized Loss. Stipulation, Ex. A-1 ¶ 54. The proposed plan reduces a claimant's Recognized Loss to zero if they had a trading gain or broke even from their overall transactions in ChinaCache ADRs during the Settlement Class Period. *Id.* ¶ 59. It also caps a claimant's Recognized Loss to their actual trading loss to the extent that a claimant suffered a trading loss on their overall transactions in ChinaCache ADRs

during the Settlement Class Period, but that trading loss was less than the Recognized Loss required by the proposed plan of allocation. *Id.* Courts in the Ninth Circuit regularly approve similar plans. *See*, *e.g.*, *Zynga*, 2015 WL 6471171, at *12; *Nguyen*, 2014 WL 1802293, at *5; *Omnivision*, 559 F. Supp. 2d. at 1045. Since the proposed plan's formula for allocating the Net Settlement Fund is "rationally related to the relative strengths and weaknesses of the respective claims asserted," *Rosenburg*, 2007 WL 128232, at *5, the Court should preliminarily approve it.

## IV. THE COURT SHOULD APPROVE THE PROPOSED NOTICE PROCEDURES

### A. Notice by Direct Mail and Publication Is Appropriate

Rule 23 requires that notice of a settlement be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *see also* Fed. R. Civ. P. 23(e)(1) ("The court must direct notice in a reasonable manner to all class members who would be bound by the propos[ed settlement]"). The Ninth Circuit has held that "[n]otice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir. 2009).[7] In securities class actions, it is customary to provide notice by (a) publishing a summary notice in a major publication, (b) publishing this same summary notice in a press release, (c) mailing long-form notice to all individual shareholders who can be found, and (d)

---

[7] *See also Sandoval v. Tharaldson Employee Mgmt., Inc.*, No. EDCV 08-482-VAP(OP), 2010 WL 2486346, at *11 (C.D. Cal. June 15, 2010) ("The notice must explain in easily understood language the nature of the action, definition of the class, class claims, issues and defenses, ability to appear through individual counsel, procedure to request exclusion, and binding nature of a class judgment").

PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

publishing notice on a website. *See, e.g.*, *Goldstein v. Tongxin Int'l Ltd.*, No. 2:11-cv-00348-JAK(PJWx), 2012 WL 13006188, at *2 (C.D. Cal. May 3, 2012).[8]

The proposed Notice, which will be published and also sent to Settlement Class Members by first class mail, is attached to the Stipulation as Exhibit 1 to Exhibit A. The Notice describes in plain English the terms of the Settlement, the considerations that led Lead Counsel to conclude that the Settlement is fair and adequate, the maximum attorneys' fees award and expense reimbursement that may be sought, the procedure to object to the Settlement, and the date and place of the Settlement Hearing. For purposes of identifying and providing the Notice to Settlement Class Members, within seven (7) business days of the date of entry of the Preliminary Approval Order, ChinaCache shall provide or cause to be provided to the Claims Administrator in electronic format its lists (consisting of names and addresses) of the holders of ChinaCache securities during the Settlement Class Period. With the Court's approval, the Notice will be mailed to Settlement Class Members identified by ChinaCache within 20 business days of the date of entry of the Preliminary Approval Order, and mailed to shareholders identified in requests to nominees no later than 60 days prior to the Settlement Hearing.

Neither Rule 23 nor due process requires receipt of actual notice by all Settlement Class Members; rather, notice should be mailed to the last known addresses of those who can be identified and publication used to notify others. 3 *Newberg on Class Actions* § 8:8 (5th ed. 2020); *see also Silber v. Mabon*, 18 F.3d 1449, 1451 (9th Cir. 1994) (ruling that long form notices that were mailed first class to all "identified class members" at least sixty days prior to the hearing on the fairness of the settlement and forty days before the opt out deadline satisfied that "best practicable" standard for class notice). The proposed Notice, proposed Claim Form,

---

[8] *See also In re Hot Topic, Inc. Sec. Litig.*, No. CV 13-02939 SJO (JCx), 2015 WL 12776582, at *7 (C.D. Cal. June 30, 2015); *In re Portal Software, Inc. Sec. Litig.*, No. C-03-5138 VRW, 2007 WL 4171201, at *1 (N.D. Cal. Nov. 26, 2007).

and proposed Summary Notice to be published in *Investor's Business Daily* and to be transmitted once over the *PR Newswire*, are attached to the Stipulation as exhibits to Exhibit A, and should be approved by the Court.

**B.      The Proposed Form of Notice Adequately Informs Settlement Class Members of Their Rights in This Litigation**

In an action proceeding under Rule 23(b)(3), the notice must inform each class member that "the court will exclude anyone from the class if he so requests [by a specified date]; the judgment will include all members who do not request exclusion and any member not requesting exclusion may, if he desires, enter an appearance through counsel." Fed. R. Civ. P. 23(c)(2).

Here, the proposed Notice, attached to the Stipulation as Exhibit 1 to Exhibit A, clearly and accurately discloses the information material to a Settlement Class Member's decision whether to accept, object to, or opt out of the Settlement. The proposed Notice provides information on, *inter alia:* the proposed Settlement Class; the terms and provisions of the Amended Stipulation, including the Settlement Amount; the relief to the Settlement Class and the releases to Defendants and Defendants' Releasees that the Settlement will provide; the maximum award of attorney's fees and reimbursement of reasonable expenses to Lead Counsel; the date, time and place of the final approval hearing; and the procedures and deadlines for opting out of the settlement or submitting comments or objections.

The Notice also meets the requirements of the PSLRA, 15 U.S.C. § 78u-4(a)(7). The Notice provides:

- a cover page summarizing the information contained in the Notice;
- a statement of the Settlement Class Members' recovery, estimating a gross average recovery of $0.09 per damaged share before deduction of Court-approved fees and expenses and costs of notice and claims administration, while making clear that the Plan of Allocation will cause the actual amount

recovered by any specific Settlement Class Member to vary greatly across the Settlement Class;

- the general terms of the Settlement;
- a statement of the potential outcome of the case including a statement concerning the issues on which the parties disagree;
- a statement of attorney's fees or costs sought, including a summary of this information on the cover page;
- information on how to contact the Claims Administrator and/or Lead Counsel (including names, addresses, telephone numbers, and websites); and
- a discussion of the reasons for the proposed Settlement, including the factors the Parties considered in reaching the proposed Settlement.

Thus, the proposed Notice to be sent to the Settlement Class provides all of the information required by the PSLRA. The Court should approve the proposed form of Notice and direct that notice be given to the Settlement Class as proposed by the parties.

## V. PROPOSED SCHEDULE OF EVENTS

Plaintiff proposes the following procedural schedule. The schedule is similar to those used in similar class action settlements and provides due process for potential Settlement Class Members with respect to their rights concerning the Settlement. If this schedule is not convenient for the Court, Plaintiff requests the Court use at least the same or greater intervals between each event listed in the schedule to allow sufficient time to comply with the Preliminary Approval Order.

| Event | Deadline |
|---|---|
| Date for the Settlement Hearing (Preliminary Approval Order ¶ 5) | At least 120 days after entry of the Preliminary Approval Order, or at the Court's earliest convenience. |
| Mailing of the Notice and Proof of Claim (Preliminary Approval Order ¶ 7(b)) (the "Notice Date") | No later than 20 business days following entry of the Preliminary Approval Order. |

| | |
|---|---|
| Publication of the Summary Notice (Preliminary Approval Order ¶ 7(d)) | No later than 10 business days after the Notice Date. |
| Date to file papers in support of the Settlement, the Plan of Allocation, and for application of attorneys' fees and expenses (Preliminary Approval Order ¶ 26) | 35 days prior to the Settlement Hearing. |
| Filing deadline for exclusion requests and objections (Preliminary Approval Order ¶¶ 13, 17) | Received no later than 21 days prior to the Settlement Hearing. |
| Date for filing reply papers (Preliminary Approval Order ¶ 26) | 7 days prior to the Settlement Hearing. |
| Deadline for submitting Claim Forms (Preliminary Approval Order ¶ 10) | 120 days after the Notice Date |

## VI.  CONCLUSION

For the forgoing reasons, Plaintiff respectfully requests that the Court grant the requested relief.

Dated: December 15, 2020                    Respectfully submitted,


**POMERANTZ LLP**
*/s/ Brenda Szydlo*
Jeremy A. Lieberman (admitted *pro hac vice*)
Brenda Szydlo (admitted *pro hac vice*)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: 212-661-1100
Facsimile: 917-463-1044
Email: jalieberman@pomlaw.com
Email: bszydlo@pomlaw.com

PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF SETTLEMENT

**POMERANTZ LLP**
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, CA 90024
Telephone: (310) 405-7190
Email: jpafiti@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South LaSalle Street, Suite 3505
Chicago, IL 60603
Telephone: 312-377-1181
Facsimile: 312-377-1184
Email: pdahlstrom@pomlaw.com

*Counsel for Lead Plaintiff and the Proposed Settlement Class*

**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen (SBN 219683)
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Additional Counsel for Lead Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on December 15, 2020, a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF System.

/s/Brenda Szydlo

Brenda Szydlo