**POMERANTZ LLP**
Jeremy A. Lieberman (admitted *pro hac vice*)
Brenda Szydlo (admitted *pro hac vice*)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: 212-661-1100
Facsimile: 917-463-1044
Email: jalieberman@pomlaw.com
Email: bszydlo@pomlaw.com

*Counsel for Lead Plaintiff and*
*the Proposed Settlement Class*

[Additional counsel on signature page]

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM LIKAS, Individually and On Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>    v.<br><br>CHINACACHE INTERNATIONAL HOLDINGS LTD., SONG WANG, GUANGSHENG MENG, FENGYE GAO, and JING AN,<br><br>    Defendants. | No.: 2:19-cv-06942-JWH-SS<br><br>CLASS ACTION<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION, AND FINAL CERTIFICATION OF SETTLEMENT CLASS**<br><br>Date: August 27, 2021<br>Time: 9:00 a.m.<br>Courtroom: 2<br>Judge: Hon. John W. Holcomb |

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL
APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION, AND FINAL CERTIFICATION OF
SETTLEMENT CLASS

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................1

II.     CASE BACKGROUND ......................................................................................3

        A.      Plaintiff's Allegations ...........................................................................3

        B.      Procedural History ................................................................................3

III.    CERTIFICATION OF THE SETTLEMENT CLASS IS WARRANTED .........4

        A.      The Settlement Class Satisfies All Requirements of Rule 23(a) .............5

        B.      The Settlement Class Satisfies All Requirements of Rule 23(b)(3) .........7

IV.     THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL ..........8

        A.      The Overall Strength of Plaintiff's Case, Including the Risk, Expense, Complexity, and Likely Duration of Further Litigation, Supports Final Approval of the Settlement ..................................................................................9

                1.      Plaintiff Faced the Risk of Dismissal ..........................................10

                2.      Plaintiff Faced the Risks of Obtaining Class Certification and Maintaining Class Action Status through Trial ...........................11

                3.      Plaintiff Faced Additional Risks of Continued Litigation............12

                4.      The Risk of Collecting a Greater Judgment in China...................14

        B.      The Amount Obtained in Settlement Supports Final Approval..............14

        C.      The Extent of Discovery Completed and the Stage of the Proceedings Support Final Approval........................................................................16

        D.      The Proposed Settlement Results from Good Faith Arm's-Length Negotiations by Informed, Experienced Counsel ..................................18

        E.      The Reaction of the Settlement Class Supports Approval......................20

        F.      The Settlement Meets the Remaining Rule 23(e)(2) Factors .................21

                1.      The Proposed Method for Distributing Relief Is Effective ..........21

                2.      The Attorneys' Fees Are Appropriate ..........................................21

                3.      The Parties Have No Other Agreements Besides Opt-Outs.........22

                4.      There Is No Preferential Treatment; the Proposed Plan of Allocation Treats Class Members Equitably ...............................23

        G.      The Court Should Approve the Plan of Allocation...............................23

V.      NOTICE TO THE SETTLMENT CLASS SATISFIED DUE PROCESS .......24

- i -

VI.   CONCLUSION .............................................................................................26

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION, AND FINAL CERTIFICATION OF SETTLEMENT CLASS

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Amchem Prod., Inc. v. Windsor*,
   521 U.S. 591 (1997)..................................................................................................7

*Basic Inc. v. Levinson*,
   485 U.S. 224 (1988).................................................................................................12

*Blackie v. Barrack*,
   524 F.2d 891 (9th Cir. 1975) ....................................................................................7

*Dura Pharm., Inc. v. Broudo*,
   544 U.S. 336 (2005).................................................................................................10

*Ellis v. Naval Air Rework Facility*,
   87 F.R.D. 15 (N.D. Cal. 1980) ................................................................................19

*Eminence Capital, LLC v. Aspeon, Inc.*,
   316 F.3d 1048 (9th Cir. 2003) .................................................................................10

*Evans v. Jeff D.*,
   475 U.S. 717 (1986)...................................................................................................8

*Glass v. UBS Fin. Servs., Inc.*, No. C-06-4068 MMC,
   2007 WL 221862 (N.D. Cal. Jan. 26, 2007),
   *aff'd*, 331 F. Appx. 452 (9th Cir. 2009)..................................................................18

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) .......................................................................9, 14, 21

*Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST,
   2018 WL 6619983 (N.D. Cal. Dec. 18, 2018)
   *aff'd sub nom. Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020) ........................10

*Hubbard v. BankAtlantic Bancorp, Inc.*,
   688 F.3d 713 (11th Cir. 2012) ...........................................................................13, 15

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL
APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION, AND FINAL CERTIFICATION OF
SETTLEMENT CLASS

*In re BankAtlantic Bancorp, Inc.*, No. 07-61542-CIV,
   2011 WL 1585605 (S.D. Fla. Apr. 25, 2011)
   *aff'd on other grounds sub nom.*
   *Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012)...............13

*In re China Med. Corp. Sec. Litig.*, No. 8:11-1061-JST (ANX),
   2013 WL 12126754 (C.D. Cal. May 16, 2013)........................................................6

*In re Cooper Cos. Inc. Sec. Litig.*,
   254 F.R.D. 628 (C.D. Cal. 2009)...........................................................................7

*In re Critical Path, Inc.*, No. C 01-00551 WHA,
   2002 WL 32627559 (N.D. Cal. June 18, 2002) .....................................................17

*In re Datatec Sys., Inc. Sec. Litig.*, No. 04-CV-525 (GEB),
   2007 WL 4225828 (D.N.J. Nov. 28, 2007) ............................................................24

*In re Gen. Instrument Sec. Litig.*,
   209 F. Supp. 2d 423 (E.D. Pa. 2001).....................................................................24

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
   279 F.R.D. 151 (S.D.N.Y. 2011) ...........................................................................16

*In re Heritage Bond Litig.*, No. 02-ML-1475 DT,
   2005 WL 1594403 (C.D. Cal. June 10, 2005)...................................10, 13, 16, 20

*In re Immune Response Sec. Litig.*,
   497 F. Supp. 2d 1166 (S.D. Cal. 2007) .................................................................25

*In re LJ Int'l, Inc. Sec. Litig.*, No. CV0706076GAFJWJX,
   2009 WL 10669955 (C.D. Cal. Oct. 19, 2009) .....................................................11

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) ..........................................................................*passim*

*In re Omnivision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008)..................................................8, 16, 20, 23

*In re Oracle Corp. Sec. Litig.*,
   627 F.3d 376 (9th Cir. 2010) .................................................................................13

- iv -

*In re Pac. Enters. Sec. Litig.*,
47 F.3d 373 (9th Cir. 1995) .......................................................................... 20

*In re Portal Software, Inc. Sec. Litig.*, No. C 03 5138 VRW,
2007 WL 1991529 (N.D. Cal. June 30, 2007) .............................................. 18

*In re Portal Software, Inc. Sec. Litig.*, No. C-03-5138 VRW,
2007 WL 4171201 (N.D. Cal. Nov. 26, 2007) .............................................. 26

*In re Puda Coal Sec. Inc., Litig.*,
30 F. Supp. 3d 230 (S.D.N.Y. 2014)
*aff'd sub nom. Querub v. Hong Kong*, 649 F. App'x 55 (2d Cir. 2016) ............... 13

*In re Rambus Inc. Derivative Litig.*, No. C 06-3513 JF (HRL),
2009 WL 166689 (N.D. Cal. Jan. 20, 2009) ................................................. 20

*In re Silver Wheaton Corp. Sec. Litig.*, No. 215CV05146CASJEMX,
2017 WL 2039171 (C.D. Cal. May 11, 2017) ............................................. 5, 6

*In re Sumitomo Copper Litig.*,
189 F.R.D. 274 (S.D.N.Y. 1999) .................................................................. 10

*In re Syncor ERISA Litig.*,
516 F.3d 1095 (9th Cir. 2008) ........................................................................ 8

*In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*,
No. MDL 2672 CRB (JSC), 2016 WL 6248426 (N.D. Cal. Oct. 25, 2016) .... 16, 17

*In re WorldCom, Inc. Sec. Litig.*,
388 F. Supp. 2d 319 (S.D.N.Y. 2005) .......................................................... 23

*In re Zynga Inc. Sec. Litig.*, No. 12-CV-04007-JSC,
2015 WL 6471171 (N.D. Cal. Oct. 27, 2015) .............................................. 18

*Kamakana v. City & Cty. of Honolulu*,
447 F.3d 1172 (9th Cir. 2006) ...................................................................... 22

*Knox v. Yingli Green Energy Holding Co. Ltd.*,
136 F. Supp. 3d 1159 (C.D. Cal. 2015) ........................................................ 19

*Lane v. Facebook, Inc.*,
696 F.3d 811 (9th Cir. 2012) .......................................................................... 9

- v -

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION, AND FINAL CERTIFICATION OF SETTLEMENT CLASS

*Linney v. Cellular Alaska P'ship*,
   151 F.3d 1234 (9th Cir. 1998) ..................................................................... 17

*Low v. Trump Univ., LLC*,
   246 F. Supp. 3d 1295 (S.D. Cal. 2017) ......................................................... 9

*Middlesex Cty. Ret. Sys. v. Semtech Corp.*, No. CV077114CASFMOX,
   2010 WL 11507255 (C.D. Cal. Aug. 27, 2010) ................................... 5, 6, 7

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004)............................................................ 14, 20

*Nguyen v. Radient Pharm. Corp.*,
   287 F.R.D. 563 (C.D. Cal. 2012)................................................................... 6

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*,
   688 F.2d 615 (9th Cir. 1982) .............................................................. 9, 14, 15

*Ramsey v. MRV Commc'ns Inc.*, No. CV0804561GAFRCX,
   2010 WL 11596641 (C.D. Cal. Nov. 16, 2010) ........................................... 11

*Rieckborn v. Velti PLC*, No. 13-CV-03889-WHO,
   2015 WL 468329 (N.D. Cal. Feb. 3, 2015)................................................... 18

*Riker v. Gibbons*, No. 3:08-CV-00115-LRH,
   2010 WL 4366012 (D. Nev. Oct. 28, 2010).......................................... 18, 24

*Robbins v. Koger Properties, Inc.*,
   116 F.3d 1441 (11th Cir. 1997) .................................................................... 14

*Roberti v. OSI Sys., Inc.*, No. CV1309174MWFMRW,
   2015 WL 8329916 (C.D. Cal. Dec. 8, 2015)................................................ 17

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) ........................................................................ 25

*Salazar v. Midwest Servicing Grp., Inc.*, No. 17-CV-0137-PSG-KS,
   2018 WL 3031503 (C.D. Cal. June 4, 2018)................................................... 9

*Tadepalli v. Uber Techs., Inc.*, No. 15-CV-04348-MEJ,
   2016 WL 1622881 (N.D. Cal. Apr. 25, 2016)............................................... 18

- vi -

*Tom v. Com Dev USA, LLC*, No. 16CV1363PSGGJSX,
2017 WL 10378629 (C.D. Cal. Dec. 4, 2017) ........................................................... 9

*Torrisi v. Tucson Elec. Power Co.*,
8 F.3d 1370 (9th Cir. 1993) ................................................................................... 8, 9

*Yedlowski v. Roka Bioscience, Inc.*, No. 14-CV-8020-FLW-TJB,
2016 WL 6661336 (D.N.J. Nov. 10, 2016) ............................................................ 19

*Zucco Partners, LLC v. Digimarc Corp.*,
552 F.3d 981 (9th Cir. 2009) ................................................................................ 11

## <u>Statutes, Rules, and Regulations</u>

Fed. R. Civ. P. 23 ...................................................................................................*passim*

Private Securities Litigation Reform Act ..............................................................*passim*

Rule 10b-5 (17 C.F.R. § 240.10b-5) ....................................................................... 3, 10

Section 10(b) of the Exchange Act ......................................................................... 3, 11

Section 20(a) of the Exchange Act .............................................................................. 3

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION, AND FINAL CERTIFICATION OF SETTLEMENT CLASS

Lead Plaintiff The ChinaCache Investor Group (consisting of plaintiffs Jingwen Zhang and Bingyang Cheng ("Plaintiff")) submits this memorandum in support of its motion for final approval of the Settlement and Plan of Allocation, and final certification of the Settlement Class.[1]

## I.   INTRODUCTION

Subject to this Court's approval, Plaintiff and Defendants ChinaCache International Holdings Ltd. ("ChinaCache" or the "Company"), Jing An (together with ChinaCache, the "Settling Defendants")[2] have agreed to settle all claims in the Action against Defendants in exchange for a cash payment of one million eight hundred thousand U.S. dollars ($1,800,000). This is a favorable result for the Settlement Class in light of the many risks inherent in this litigation against a China-based issuer.

The Settlement is the product of Lead Counsel's extensive investigation concerning the claims asserted in the Action and vigorous prosecution of the litigation on behalf of the Settlement Class. By the time the agreement to settle was reached, Lead Counsel had a thorough understanding of the strengths and potential weaknesses of the case, and had spent considerable time on behalf of ChinaCache Securities holders, including conducting a wide-ranging cross-border factual investigation, retaining private investigators and experts; drafting a highly detailed pleading, and preparing for

[1] Unless otherwise defined herein, capitalized terms take the same meaning provided in the Stipulation and Agreement of Settlement dated December 15, 2020 ("Settlement" or "Stipulation") (Dkt. No. 75-1). Internal citations and quotations are omitted and emphasis is added unless otherwise noted. Citations to the "Szydlo Dec." are to the Declaration of Brenda Szydlo In Support Of Plaintiff's Motions For (1) Final Approval Of Proposed Class Action Settlement; And (2) Award Of Attorneys' Fees, Reimbursement Of Expenses, And Awards to Plaintiff, filed herewith. Citations to "Bravata Dec." are to the Declaration of Josephine Bravata, attached as Exhibit 1 to the Szydlo Dec. Citations to "Fee Brief" are to the Memorandum of Points and Authorities in Support of Plaintiff's Motion for an Award of Attorneys' Fees and Expenses, and Awards to Plaintiff, filed herewith.

[2] Plaintiff and the Settling Defendants are referred to as the "Parties."

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION, AND FINAL CERTIFICATION OF SETTLEMENT CLASS

and participating in the mediation and settlement discussions overseen by a respected and experienced mediator, David Murphy of Phillips ADR (the "Mediator"), which included the exchange of detailed mediation statements.

While Plaintiff and Lead Counsel believe that Plaintiff's claims are meritorious, they recognize the substantial challenges to establishing liability, proving damages, and achieving (and collecting upon) a greater recovery. Defendants have and will continue to contest each element of Plaintiff's claims. Moreover, discovery would have been difficult and expensive given that the vast majority of the documents and witnesses are in China. Finally, even if Plaintiff could have succeeded at trial, there is a significant risk that they would not be able to collect on a judgment, as each Defendant is based in China, and China does not recognize U.S. judgments.

The Settlement is fair, adequate, and reasonable under the governing standards in this Circuit. The $1,800,000 Settlement falls well within the range of settlements in comparable securities fraud cases and eliminates the significant costs and risks of continuing litigation through a decision on Defendants' motion to dismiss, and if successful, through summary judgment, trial and the inevitable appeals. Additionally, as of the date of this filing, no objections to any aspect of the Settlement has been received, and there has only been one invalid exclusion request received from an individual who declined to provide the necessary information to demonstrate that he is a member of the Settlement Class. Likewise, the proposed Plan of Allocation is eminently fair and reasonable, as it equitably allocates the Net Settlement Fund to those Settlement Class Members who submit valid claims.

For these reasons, and those set forth below, Plaintiff respectfully submits that the Settlement and Plan of Allocation are in the best interests of the Settlement Class and merit final approval.

- 2 -

## II.   CASE BACKGROUND

### A.   Plaintiff's Allegations

In its Amended Complaint, Plaintiff alleged claims against all Defendants under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, and against the Individual Defendants under Section 20(a) of the Exchange Act, on behalf of a putative class of investors who purchased ChinaCache Securities between April 10, 2015 and May 17, 2019, both dates inclusive. (Dkt. No. 45). The Amended Complaint alleged that throughout the Class Period, Defendants made materially false and misleading statements and failed to disclose that ChinaCache and Defendant Song Wang ("Wang")—the Company's Chief Executive Officer ("CEO") and Chairman of the Board of Directors ("Chairman")—were involved in a bribery scandal. The Amended Complaint alleged that the foregoing conduct placed ChinaCache and Wang at a heightened risk of criminal investigation and enforcement action by government authorities, which would foreseeably disrupt the Company's operations. The Amended Complaint further alleged that this resulted in the criminal investigations of Wang and the Company, the arrest of Wang, and the indictment of the Company in China. Plaintiff alleges that it and the members of the Settlement Class suffered damages because it purchased ChinaCache Securities at inflated prices and when the truth came out, the inflation dissipated.

### B.   Procedural History

On June 12, 2019, a class action complaint was filed in the U.S. District Court for the Southern District of New York, styled *Sun v. ChinaCache International Holdings Ltd., et al.*, No. 1:19-cv-05485 (S.D.N.Y. Jun 12, 2019) (the "New York Action"). On August 9, 2019, the initial complaint in this action was filed in the United States District Court for the Central District of California, styled *Likas v. ChinaCache International Holdings Ltd. et al.*, 2:19-cv-06942. On August 30, 2019, the plaintiff in the New York Action filed a voluntary dismissal. (*See* New York Action, Dkt. No. 16).

- 3 -

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION, AND FINAL CERTIFICATION OF SETTLEMENT CLASS

On October 2, 2019, the Honorable Fernando M. Olguin appointed The ChinaCache Investor Group as Lead Plaintiff for the Action and approved Lead Plaintiff's selection of Pomerantz LLP as Lead Counsel. (Dkt. No. 25).

Beginning in April 2020, the Parties engaged in arm's-length settlement negotiations for months. On June 18, 2020, Lead Counsel and Settling Defendants' Counsel participated in a full-day virtual mediation session before the Mediator. The Parties were unable to reach an agreement to settle the Action during the mediation. The Parties, however, continued their arm's-length settlement negotiation afterwards while they concurrently proceeded with this Action.

On July 9, 2020, Plaintiff filed its Amended Complaint (Dkt. No. 45), and on October 6, 2020, the Settling Defendants filed their Motion to Dismiss the Amended Complaint. (Dkt. No. 67).

In October 2020, the Parties reached an agreement to settle the Action, and on December 2020, the Parties formalized the settlement in the Stipulation.

On April 26, 2021, the Court entered an order preliminarily approving the Settlement and directing the provision of notice. (Dkt. No. 84).

## III.   CERTIFICATION OF THE SETTLEMENT CLASS IS WARRANTED

The Court preliminarily certified the Settlement Class for settlement purposes in its Preliminary Approval Order. Dkt. No. 84 ¶1. As previewed in Plaintiff's brief in support of preliminary approval of the Settlement (Dkt. No. 74), certification of the Settlement Class under Rule 23 is merited here. No pertinent changes have transpired since the Court issued the Preliminary Approval Order. Thus, the Court should certify the Settlement Class for settlement purposes. Certification of a settlement class is appropriate where the proposed class and class representatives meet the four requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy. *See* Fed. R. Civ. P. 23(a); Dkt. No. 74 (preliminary approval brief). Certifying a class action

- 4 -

for damages also requires a showing under Rule 23(b)(3) of predominance and superiority. Fed. R. Civ. P. 23(b)(3).

The Parties stipulated to the certification of the Settlement Class only for settlement purposes. Stipulation ¶2. Plaintiff requests that the Court finally certify the Settlement Class defined in the Stipulation, and conditionally certified in the Preliminary Approval Order, comprising "all persons or entities who or which purchased or otherwise acquired ChinaCache Securities between April 10, 2015 and May 17, 2019, inclusive, and were allegedly damaged thereby." *Id.* ¶1.ss. [3] No circumstance has arisen since the Court's preliminary certification of the Settlement Class that should cause this Court to undo its certification.

Courts in the Ninth Circuit routinely certify class actions alleging securities fraud. *See*, *e.g.*, *In re Silver Wheaton Corp. Sec. Litig.*, No. 215CV05146CASJEMX, 2017 WL 2039171 (C.D. Cal. May 11, 2017); *Middlesex Cty. Ret. Sys. v. Semtech Corp.*, No. CV077114CASFMOX, 2010 WL 11507255 (C.D. Cal. Aug. 27, 2010). Here, the proposed Settlement Class meets all the requirements of Rules 23(a) and 23(b)(3), which is sufficient to grant final certification for purposes of the Settlement.

**A.     The Settlement Class Satisfies All Requirements of Rule 23(a)**

First, the Class is sufficiently numerous. In the Ninth Circuit, "classes of 40 or more are numerous enough." *Silver Wheaton*, 2017 WL 2039171, at *6. In cases involving nationally traded stocks, like ChinaCache, where "the exact size of the proposed class is unknown, but general knowledge and common sense indicate it is

---

[3] "Excluded from the Settlement Class are Defendants, the present and former Officers and directors of ChinaCache and any subsidiary thereof, and the Immediate Family members, legal representatives, heirs, successors or assigns of such excluded persons and any entity in which any such excluded person has or had a controlling interest during the Settlement Class Period. Also excluded from the Settlement Class are any persons and entities who or which exclude themselves by submitting a valid and timely request for exclusion and persons and entities with no compensable losses." Stipulation ¶1.ss.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION, AND FINAL CERTIFICATION OF SETTLEMENT CLASS

large, the numerosity requirement is satisfied." *Nguyen v. Radient Pharm. Corp.*, 287 F.R.D. 563, 569 (C.D. Cal. 2012); *see also Silver Wheaton*, 2017 WL 2039171, at \*6.

Second, the conduct alleged in the Amended Complaint was common to all members of the Settlement Class. All Settlement Class Members purchased or otherwise acquired ChinaCache Securities during the Settlement Class Period, at prices artificially inflated by Defendants' alleged misrepresentations and omissions, and were damaged when the truth was revealed. That is sufficient to show commonality.

Third, Plaintiff's claims are typical of those of the rest of the Settlement Class. They each purchased ChinaCache Securities during the Settlement Class Period, holding shares up to or through the end of the Settlement Class Period and suffering significant losses. *See* Dkt. No. 9-2 (Plaintiff's PSLRA certifications). There is no evidence suggesting that Plaintiff's claims are atypical of the Settlement Class or that any unique defenses apply to Plaintiff's claims. *See Semtech*, 2010 WL 11507255 at \*4-5 (finding typicality was met despite certain unique factors). Plaintiff satisfies the typicality requirement.

Fourth, Plaintiff is an adequate representative of the Settlement Class, and the Court-appointed Lead Counsel, Pomerantz, is adequate counsel. Plaintiff has been diligent in monitoring this Action and supervising Lead Counsel. *See* Szydlo Dec., Exhibits 4-5 (Declarations of Jingwen Zhang and Bingyang Cheng). No evidence exists of any conflicts of interest between Plaintiff and the other Settlement Class Members. *Silver Wheaton*, 2017 WL 2039171 at \*7-8. Pomerantz is experienced in prosecuting similar securities fraud class actions and has skillfully litigated this Action through the pleadings stage. *See In re China Med. Corp. Sec. Litig.*, No. 8:11-1061-JST (ANX), 2013 WL 12126754, at \*4 (C.D. Cal. May 16, 2013). Plaintiff and Pomerantz thus satisfy the adequacy requirement.

- 6 -

## B.     The Settlement Class Satisfies All Requirements of Rule 23(b)(3)

Class certification is warranted where common questions of law or fact predominate over any individual question and a class action is superior to other available means of adjudication. Fed. R. Civ. P. 23(b)(3); *see also Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 607 (1997). This standard is easily met here, as it is in most securities class actions. The root of the Action – whether Defendants made public misrepresentations of material facts with scienter, artificially inflating the price of securities – is the central issue and predominates over any theoretical individual issue that may arise. The common resolution of these issues supports a finding of predominance. *Semtech*, 2010 WL 11507255, at *7; *In re Cooper Cos. Inc. Sec. Litig.*, 254 F.R.D. 628, 641 (C.D. Cal. 2009) ("The common questions of whether misrepresentations were made and whether Defendants had the requisite scienter predominate over any individual questions of reliance and damages.").

The class action is also the best method of resolving this Action. For certification of a settlement class, as Plaintiff seeks here, the Court is not required to analyze each superiority factor in great detail. *Amchem*, 521 U.S. at 620. A court does not need to consider whether there would be manageability issues at trial since a proposed settlement would avoid the need for trial. *Id.* The Ninth Circuit has long recognized that class actions are a superior way to pursue securities fraud actions. "The availability of the class action to redress such frauds has been consistently upheld, in large part because of the substantial role that the deterrent effect of class actions plays in accomplishing the objectives of the securities laws." *Blackie v. Barrack*, 524 F.2d 891, 903 (9th Cir. 1975). "[I]t is well recognized that Rule 23 is to be liberally construed in a securities fraud context because class actions are particularly effective in serving as private policing weapons against corporate wrongdoing." *Id.*

This Settlement Class satisfies each of the requirements of Rules 23(a) and 23(b)(3). The Court should grant final certification of the Settlement Class.

- 7 -

## IV.   THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL

It is within the "sound discretion of the district courts to appraise the reasonableness of [] settlements on a case-by-case basis." *Evans v. Jeff D.*, 475 U.S. 717, 742 (1986). The Ninth Circuit strongly favors settlement "particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008) ("the court must also be mindful of the Ninth Circuit's policy favoring settlement, particularly in class action law suits").

Federal Rule of Civil Procedure 23(e) requires judicial approval of class action settlements as follows:

(2) ***Approval of the Proposal.***  If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:

   (A)   the class representatives and class counsel have adequately represented the class;
   (B)   the proposal was negotiated at arm's length;
   (C)   the relief provided for the class is adequate, taking into account:
      (i)   the costs, risks, and delay of trial and appeal;
      (ii)  the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
      (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
      (iv)  any agreement required to be identified under Rule 23(e)(3); and
   (D)   the proposal treats class members equitably relative to each other.

Ultimately, "[a] settlement should be approved if it is fundamentally fair, adequate and reasonable." *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000) (same).

In evaluating whether settlements are fair, reasonable, and adequate, courts in the Ninth Circuit consider the following factors, some of which overlap with the

- 8 -

requirements of Rule 23(e)(2): "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a government participant;[4] and the reaction of the class members to the proposed settlement." *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) ((citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)). Keeping in mind that "it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements," courts should not convert settlement approval into an inquiry on the merits. *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). Here, each of Rule 23(e)'s and the Ninth Circuit's factors weighs in favor of final approval of the Settlement.

### A. The Overall Strength of Plaintiff's Case, Including the Risk, Expense, Complexity, and Likely Duration of Further Litigation, Supports Final Approval of the Settlement

The expense, complexity, and possible duration of the litigation are key factors in evaluating the reasonableness of a settlement. *See*, *e.g.*, *Torrisi*, 8 F.3d at 1375-76 (finding that "the cost, complexity and time of fully litigating the case" rendered the settlement fair). A settlement's "elimination of risk, delay, and further expenses weighs in favor of approval." *See, e.g., Salazar v. Midwest Servicing Grp., Inc.*, No. 17-CV-0137-PSG-KS, 2018 WL 3031503, at *6 (C.D. Cal. June 4, 2018). Courts favor settlement where, as here, the case is "complex and likely to be expensive and lengthy to try" and presents material risks beyond the "inherent risks of litigation." *Low v. Trump Univ., LLC*, 246 F. Supp. 3d 1295, 1301 (S.D. Cal. 2017). Even among class

---

[4] Here, there was no government participant, so this factor is neutral. *Tom v. Com Dev USA, LLC*, No. 16CV1363PSGGJSX, 2017 WL 10378629, at *5 (C.D. Cal. Dec. 4, 2017).

actions, securities actions are complex and their outcomes uncertain. *Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST, 2018 WL 6619983, at *13 (N.D. Cal. Dec. 18, 2018), *aff'd sub nom. Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020). In this Action, Lead Counsel and Plaintiff carefully evaluated the merits of this case in light of all of the risks and potential weaknesses before Plaintiff entered into the Settlement.

While Plaintiff believes that its case is strong, it remains cognizant of the substantial risk posed to the Settlement Class in continuing this action. *See In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at *7 (C.D. Cal. June 10, 2005) ("It is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced"); *see also In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 282 (S.D.N.Y. 1999) (discussing several instances where settlement was rejected by a court only to have the class ultimate recovery be less than the proposed settlement).

### 1.    Plaintiff Faced the Risk of Dismissal

Class action plaintiffs face procedural hurdles and failing at any one stage of the litigation could defeat the class action. While Plaintiff believes its arguments opposing Defendants' motion to dismiss would be strong, there is no guarantee it would prevail before the Court. The PSLRA imposes heightened pleading burdens on complaints alleging securities fraud that are "not [] easy [] to comply with." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

In its motion to dismiss, the Settling Defendants argued the lack of falsity and loss causation as to the Settling Defendants and additionally, lack of scienter as to Defendant An. *See Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 341–42 (2005) (the elements of a Rule 10b-5 claim are falsity, materiality, scienter, reliance, loss causation and damages). In particular, Plaintiff faced the risk that the Court would find that ChinaCache's statements about the 2014 Sale/Leaseback Deal and anti-corruption practices were not actionably false or misleading, depending on how the Court

- 10 -

interpreted Defendants' alleged bribery associated with the 2014 Sale/Leaseback Deal. Szydlo Dec. ¶24. The Court could have also found that Defendant An did not make any actionable misstatements under Section 10(b) because Plaintiff failed to allege that Defendant An participated in, or exercised authority over, such misstatements.

Plaintiff also faced the risk that the Court would find that they had not adequately pleaded facts supporting a strong inference that Defendant An acted with scienter. *Id.* ¶25. Plaintiff must show that Defendant An made false statements "intentionally or with deliberate recklessness." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 991 (9th Cir. 2009). Scienter is difficult to prove. *In re LJ Int'l, Inc. Sec. Litig.*, No. CV0706076GAFJWJX, 2009 WL 10669955, at *3 (C.D. Cal. Oct. 19, 2009).

Here, Plaintiff was faced with alleging scienter through circumstantial evidence – an especially difficult task. *Ramsey v. MRV Commc'ns Inc.*, No. CV0804561GAFRCX, 2010 WL 11596641, at *3 (C.D. Cal. Nov. 16, 2010). The Court could have found that Plaintiff failed to adequately plead that Defendant An acted with scienter. Specifically, the Court could have found that Plaintiff pleaded no facts that Defendants An was aware of the alleged bribery or misconduct at the Company, or that she was connected to any investigations alleged in the Amended Complaint. Szydlo Dec. ¶25. The risk of dismissal due to the heightened pleadings standards supports approval of the Settlement.

### 2. Plaintiff Faced the Risks of Obtaining Class Certification and Maintaining Class Action Status through Trial

Even if Plaintiff defeated the motion to dismiss, it would still need to undertake the somewhat complex and expensive task of certifying the putative class. In any securities fraud class action, a plaintiff faces significant challenges to certifying a class and maintaining certification throughout trial. One of the more difficult elements to satisfy is showing that class-wide issues, such as reliance on Defendants' misrepresentations, predominate over individualized issues. To show their entitlement

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION, AND FINAL CERTIFICATION OF SETTLEMENT CLASS

to the presumption of class-wide reliance, Plaintiff would need to prove that ChinaCache Securities traded in an efficient market during the Class Period, such that new, material information was rapidly incorporated into ChinaCache's stock price. *Basic Inc. v. Levinson*, 485 U.S. 224, 241-250 (1988)

To meet the standards for the *Basic* presumption, Plaintiff would have had to hire an expert economist to conduct an event study showing the price reaction of ChinaCache Securities to new, material information, prepare a report, and testify at a deposition on the issue of market efficiency. Such well-qualified experts are expensive. Szydlo Dec. ¶26. Defendants would likely contest the efficiency of the market for ChinaCache securities and/or whether the fraud impacted the price of them. Defendants would present their own expert report and testimony to oppose class certification. In addition to briefing the certification motion, Plaintiff would need to produce and review documents, sit for depositions, and take the opposing expert's deposition.

Even if Plaintiff were successful in obtaining class certification, it faced a risk that it would not be able to sustain class certification through judgment. Rule 23(c)(1) expressly provides that a class certification order may be "altered or amended before final judgment." Fed. R. Civ. P. 23(c)(1). A class is not safely certified until judgment. While rare, a change in the law or facts might upset certification. Thus, the necessity of complex and costly class certification proceedings together with the risk this Court would have denied certification, supports the Settlement's adequacy.

### 3. Plaintiff Faced Additional Risks of Continued Litigation

Even if Plaintiff were to defeat the motion to dismiss and successfully obtain class certification, there is no question that further litigation would be risky, complex, and expensive. First, they would need to engage in fact discovery, requiring review of thousands of documents and deposing Defendants, ChinaCache employees, and non-parties. Given that most of the relevant documents and witnesses are in China, and it is notoriously difficult for foreign litigants to obtain discovery in China, this would be

- 12 -

difficult. Szydlo Dec. ¶28. Further, because most of the relevant documents would probably be in Chinese and many of the witnesses can only testify in Chinese, the cost associated with translation, interpretation, and engagement of Chinese-English bilingual attorneys to review produced files would be exceedingly expensive. After the close of merits discovery, the parties would engage in expert discovery on the questions of loss causation and damages, and perhaps other issues as well. Defendants would present their own expert testimony to challenge loss causation. *Id.* ¶27. All told, expert discovery and trial preparation would prove expensive and complex. *See Heritage Bond*, 2005 WL 1594403, at *6.

Even beyond class certification, further perils await. Plaintiff might lose on summary judgment. *See*, *e.g., In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 395 (9th Cir. 2010) (affirming summary judgment in favor of defendants where plaintiff failed to establish a triable issue on loss causation). Additionally, Plaintiff might have an expert excluded, crippling its case. *See*, *e.g.*, *In re Puda Coal Sec. Inc., Litig.*, 30 F. Supp. 3d 230, 254 (S.D.N.Y. 2014), *aff'd sub nom. Querub v. Hong Kong*, 649 F. App'x 55 (2d Cir. 2016).

Plaintiff might also lose at trial, or the jury might trim Plaintiff's damages significantly. *See Puma Biotechnology – Both Sides Claim Victory in Rare Jury Trial Verdict* (reporting that plaintiffs won only 5% of the damages they requested).[5] Plaintiff might still lose its case in this Court even after winning at trial. *See*, *e.g.*, *In re BankAtlantic Bancorp, Inc.*, No. 07-61542-CIV, 2011 WL 1585605, at *38 (S.D. Fla. Apr. 25, 2011), *aff'd on other grounds sub nom. Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012) (granting motion for judgment as a matter of law against plaintiffs after partial jury verdict in plaintiffs' favor). Even if Plaintiff survives summary judgment and motions to exclude its experts, wins at trial, secures a verdict

---

[5] Available at https://www.issgovernance.com/puma-biotechnology-both-sides-claim-victory-in-rare-jury-trial-verdict/

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION, AND FINAL CERTIFICATION OF SETTLEMENT CLASS

for its damages, and then defends the verdict from Defendants' inevitable post-trial motions, Plaintiff might still lose on appeal. *See Robbins v. Koger Properties, Inc.*, 116 F.3d 1441 (11th Cir. 1997) ($81 million jury verdict overturned).

Accordingly, the likely duration and expense of further litigation also supports a finding that the Settlement is fair, reasonable, and adequate. *See Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) ("[U]nless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results").

### 4.     The Risk of Collecting a Greater Judgment in China

ChinaCache is based in China, and its assets are primarily in China. Defendant An is a Chinese national. Judgments obtained in the United States are not enforceable in China. China does not have the class action mechanism in its legal system. Up to now, China has never recognized or enforced any U.S. class action judgment in its jurisdiction. Therefore, even if Plaintiff obtained a judgment against the Settling Defendants, there is a substantial risk that Plaintiff would be unable to collect any of the judgment. Without a settlement, there exists the real possibility that Plaintiff would spend years litigating the case to a verdict and recover nothing due to the lack of a foreign judgment enforcement mechanism in China. Szydlo Dec. ¶29.

### B.     The Amount Obtained in Settlement Supports Final Approval

The determination of a "reasonable" settlement is not susceptible to a mathematical equation yielding a particularized sum. Nor is the proposed Settlement "to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Officers for Justice*, 688 F.2d at 625. As "[s]ettlement is the offspring of compromise[,] the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon*, 150 F.3d at 1027. "Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the

- 14 -

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION, AND FINAL CERTIFICATION OF SETTLEMENT CLASS

parties each give up something they might have won had they proceeded with litigation." *Officers for Justice*, 688 F.2d at 624. Common sense dictates that Plaintiff must take less in a settlement than it would after a complete trial victory or Defendants would have no reason to settle. In a factually and legally complex securities class action lawsuit such as this, Plaintiff cannot be sure it will be able to secure or enforce a judgment at or near the full amount of the class-wide damages it estimates. In fact, a settlement may be acceptable even if it amounts to only a fraction of the potential recovery that might be available at trial. *Id.* at 628; *Mego*, 213 F.3d at 459.

Moreover, the estimated damages would be reduced or eliminated entirely if the Court or jury were to accept some or all of Defendants' defenses, including that a portion or all of the losses are attributable to causes other than the alleged misstatements or omissions, or that certain statements are not actionable. Even if Plaintiff were to prevail on loss causation at trial, a jury verdict could be reversed due to problems with loss causation. *See*, *e.g.*, *Hubbard*, 688 F.3d at 716 (reversing plaintiffs' jury verdict for failure to prove loss causation). In arriving at this Settlement, Plaintiff carefully considered the significant risk that it would be unable to recover a greater amount further down the road.

The Settlement locks in a substantial benefit for Settlement Class Members. The $1,800,000 Settlement represents almost 41% of the approximately $4,400,000 million in estimated aggregate damages under a conservative damages analysis. If it had continued to litigate, Plaintiff would have pursued the most aggressive damages calculation possible, under which damages could have been as high as $19,800,000. This approach, however, relied on a legal theory that would be materially more difficult to prove in an efficient market, based on multi-day loss causation and the absence of confounding news. Szydlo Dec. ¶27. Between 2011 and 2019, cases with maximum damages of less than $25 million, like this one, settled for a median of 16.8% of total damages. In 2020, the median recovery of potential damages was 19.7%. Laarni T.

Bulan and Laura E. Simmons, *Securities Class Action Settlements: 2020 Review and Analysis*, at 6 (Cornerstone Research 2021).[6] Thus, the Settlement's recovery of approximately 41% of the more likely damages scenario recovers more than twice the proportion of damages as the median settlement.

Further, 9% of the absolute best-case provable class-wide damages of $19,800,000 is still well within the range of the percentage of investor losses recovered in securities class action settlements. *See Omnivision*, 559 F. Supp. 2d at 1042 (approving 6% recovery of maximum damages) (citing *Heritage Bond*, 2005 WL 1594403, at *8-9 (average recovery between 2% to 3% of maximum damages)); *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 162–63 (S.D.N.Y. 2011) ("the average settlement in securities class actions ranges from 3% to 7% of the class' total estimated losses"). In the context of questions about collectability, therefore, the Settlement Amount in this case is fair, reasonable, and adequate.

## C. The Extent of Discovery Completed and the Stage of the Proceedings Support Final Approval

Courts also consider the stage of the proceedings and the amount of information available to the parties to assess the strengths and weaknesses of their case. *See Mego*, 213 F.3d at 458. Importantly, "in the context of class action settlements, formal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement." *Id.* at 459. Instead, "courts look for indications that the parties carefully investigated the claims before reaching a resolution." *In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, No. MDL 2672 CRB (JSC), 2016 WL 6248426, at *13 (N.D. Cal. Oct. 25, 2016).

---

[6] *Available at* https://www.cornerstone.com/Publications/Reports/Securities-Class-Action-Settlements-2020-Review-and-Analysis.

- 16 -

During the PSLRA-mandated discovery stay, Lead Counsel thoroughly reviewed both ChinaCache's public statements during the Class Period and other publicly available information relating to ChinaCache and to China's investigation and prosecution of ChinaCache's briberies. Szydlo Dec. ¶32. Through its thorough investigation, Lead Counsel determined the scope of the claims Plaintiff could bring on behalf of the putative class, corrective disclosures, and the corresponding misrepresentations and/or omissions, synthesizing these critical facts into a compelling Amended Complaint. *Id.* Lead Counsel also reviewed Defendants' motion to dismiss, researching the applicable law to prepare and draft, in part, Plaintiff's opposition.[7] *Id.* ¶33. As part of confidential settlement negotiations, on a strictly confidential basis, Defendants provided certain non-public financial information regarding the Company. So informed, Plaintiff was better able to judge the strength of their claims, the adequacy of the Settlement, and the fairness and adequacy of the Plan of Allocation. *Id.* ¶32.

Through these efforts, Plaintiff and Lead Counsel gained sufficient information to evaluate Settlement before additional time and resources were expended on further litigation. *Id.* Courts in this Circuit have recognized that, "[t]hrough protracted litigation, the settlement class could conceivably extract more, but at a plausible risk of getting nothing." *In re Critical Path, Inc.*, No. C 01-00551 WHA, 2002 WL 32627559, at *7 (N.D. Cal. June 18, 2002). Courts regularly find this factor to support approval of a settlement even when plaintiffs settle before a decision on the motion to dismiss or for class certification, or before any discovery. *See*, *e.g.*, *Mego*, 213 F.3d at 459 (approving settlement before extensive formal discovery); *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998) (approving settlement after the filing of a motion to dismiss and prior to significant discovery); *Roberti v. OSI Sys., Inc.*, No. CV1309174MWFMRW, 2015 WL 8329916, at *5 (C.D. Cal. Dec. 8, 2015)

[7] The Parties reached the Settlement while Lead Counsel was in the process of drafting Plaintiff's opposition to the motion to dismiss.

- 17 -

(before class certification); *Tadepalli v. Uber Techs., Inc.*, No. 15-CV-04348-MEJ, 2016 WL 1622881, at \*7 (N.D. Cal. Apr. 25, 2016) (no discovery); *Rieckborn v. Velti PLC*, No. 13-CV-03889-WHO, 2015 WL 468329, at \*6 (N.D. Cal. Feb. 3, 2015) (before decision on motion to dismiss). For this reason, courts have commended class counsel for recognizing when, as was the case here, a prompt resolution of the matter is in the best interests of the class. *See Glass v. UBS Fin. Servs., Inc.*, No. C-06-4068 MMC, 2007 WL 221862, at \*15 (N.D. Cal. Jan. 26, 2007) ("Class counsel achieved an excellent result for the class members by settling the instant action promptly"), *aff'd*, 331 F. Appx. 452, 457 (9th Cir. 2009).

Here, the Parties reached the Settlement after Plaintiff had filed its Amended Complaint and reviewed Defendants' motion to dismiss. Through the motion to dismiss briefing and months of settlement negotiations that included Defendants providing certain financial information regarding the Company on a strictly confidential basis, Plaintiff and Lead Counsel acquired "fulsome understandings" of the Parties' respective positions on the legal and factual issues in the case. *See In re Zynga Inc. Sec. Litig.*, No. 12-CV-04007-JSC, 2015 WL 6471171, at \*9 (N.D. Cal. Oct. 27, 2015). Plaintiff and Lead Counsel were sufficiently informed at this stage of the litigation to negotiate a favorable Settlement, supporting final approval.

## D. The Proposed Settlement Results from Good Faith Arm's-Length Negotiations by Informed, Experienced Counsel

Courts presume that a proposed settlement is fair and reasonable when it results from arm's-length negotiations. *See In re Portal Software, Inc. Sec. Litig.*, No. C 03 5138 VRW, 2007 WL 1991529, at \*6 (N.D. Cal. June 30, 2007); *Riker v. Gibbons*, No. 3:08-CV-00115-LRH, 2010 WL 4366012, at \*2 (D. Nev. Oct. 28, 2010) ("An initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining").

- 18 -

Here, Plaintiff reached the Settlement only through six months of arm's-length negotiations. Szydlo Dec. ¶12. The Parties discussed settlement even as they continued to litigate Defendants' motion to dismiss. *Id.* Lead Counsel also considered ChinaCache's financial situation, which was a key factor in the settlement negotiations. As noted in Plaintiff's preliminary approval brief, no hint of collusion exists here. There is no "clear sailing" agreement and the Settlement was achieved only after protracted negotiations between counsel.

In addition to the vigorous settlement negotiations, counsel on both sides are experienced and knowledgeable when it comes to litigating complex, securities class actions. The opinion of experienced counsel supporting the settlement is "entitled to considerable weight." *See*, *e.g., Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980).

Pomerantz's experience and reputation allowed it to credibly threaten further litigation and trial, but also to recognize that the Settlement was a better option for the Settlement Class. *See In re Petrobras Sec. Litig.*, No. 14-cv-9662, Opinion and Order, at 17, (ECF No. 428, February 2, 2016) (Pomerantz is "qualified, experienced and able to conduct the litigation."). In 2018, Pomerantz, as sole Lead Counsel for the class, achieved a historic $3 billion settlement, the largest class action settlement in a decade and the largest settlement ever in a class action involving a foreign issuer. *See In re Petrobras Sec. Litig.*, No. 14-cv-9662, Opinion and Order, at 1, (ECF No. 834, June 25, 2018).  Thus, Lead Counsel's experience supports approval.[8]

---

[8] Courts have also consistently found The Rosen Law Firm, P.A., additional counsel in this Action, to be well suited as class counsel in securities class actions. *See Yedlowski v. Roka Bioscience, Inc.*, No. 14-CV-8020-FLW-TJB, 2016 WL 6661336, at *21 (D.N.J. Nov. 10, 2016) ("[Rosen Law] is highly experienced in the complex field of securities fraud class action litigation."); *Knox v. Yingli Green Energy Holding Co. Ltd.*, 136 F. Supp. 3d 1159, 1165 (C.D. Cal. 2015) ("The Rosen Law Firm is 'highly qualified [and] experienced' in securities class actions.").

- 19 -

In considering final approval of the Settlement the Court should give Lead Counsel's views material weight. *See* Szydlo Dec. ¶¶13-14. In a complex class action, counsel is "most closely acquainted with the facts of the underlying litigation." *Heritage Bond*, 2005 WL 1594403, at *9. "Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). "Absent fraud, collusion, or the like," the Court should give "[g]reat weight [] to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation," *Heritage Bond*, 2005 WL 1594403, at *9.

Finally, Plaintiff's support for the Settlement is further evidence that the Settlement is fair, reasonable and adequate. *See* Szydlo Dec., Exhibits 4-5 (Declarations of Jingwen Zhang and Bingyang Cheng). Plaintiff's support for a settlement should be accorded "special weight because [the plaintiff] may have a better understanding of the case than most members of the class." *DirecTV*, 221 F.R.D. at 528 (quoting Manual for Complex Litigation (Third) § 30.44 (1995)).

### E.   The Reaction of the Settlement Class Supports Approval

The absence of many objections to a proposed class action settlement supports approval. *Omnivision*, 559 F. Supp. 2d at 1043; *In re Rambus Inc. Derivative Litig.*, No. C 06-3513 JF (HRL), 2009 WL 166689, at *3 (N.D. Cal. Jan. 20, 2009) ("the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members").

The Claims Administrator mailed 23,337 copies of the Notice and Claim Forms, and emailed two links for the Notice and Claim Form to potential Settlement Class Members. Bravata Dec. ¶7. One nominee also informed the Claims administrator that they had emailed 10,895 customers to notify them of the Settlement, including direct links to the Notice and Claim Form on the settlement website. *Id.* The deadline to file

- 20 -

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION, AND FINAL CERTIFICATION OF SETTLEMENT CLASS

objections to and request exclusion from the Settlement is August 6, 2021. To date, no Settlement Class Members have objected to the Settlement or validly requested exclusion from it. Bravata Dec. ¶¶13-14; Szydlo Dec. ¶16. "[T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness." *Hanlon*, 150 F.3d at 1027; *see also Mego*, 213 F.3d at 459 (that there was only one opt-out supports upholding district court's approval of settlement). The lack of objections or requests for exclusion supports final approval.

### F.   The Settlement Meets the Remaining Rule 23(e)(2) Factors

#### 1.   The Proposed Method for Distributing Relief Is Effective

The Court's Preliminary Approval Order established a plan to provide notice to Class Members, which Plaintiff and the Claims Administrator duly followed. As the Court directed in the Preliminary Approval Order, the Claims Administrator mailed the Notice to all those who could be identified with reasonable effort, supplemented by the online publication of the Summary Notice on *Investor's Business Daily* and transmission to *PR Newswire*. Bravata Dec. ¶10. The Notice notified Settlement Class Members of the Settlement and directed them to a case-specific website where the Claims Administrator posted key documents including the Stipulation, Notice, Proof of Claim, and Preliminary Approval Order. *Id.* ¶12.

Class Members completed a standard claim form that requests the information necessary to calculate their claim amount pursuant to the Plan of Allocation. The case-specific website also allowed Class Members to file their claims electronically without ever having to print, scan, mail, or email any document.

#### 2.   The Attorneys' Fees Are Appropriate

Rule 23 also addresses "the terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii). As discussed in the Fee Brief, Lead Counsel seek an award of attorneys' fees of 33.3% of the Settlement

- 21 -

Amount, plus interest, and expenses of $67,262.89, plus interest. This fee request, fully disclosed in the Summary Notice and Notice, is lower than that awarded in many other settlements approved in the Ninth Circuit. *See* Fee Brief, part III(C)(6).

Plaintiff also requests $2,500.00 for each of Jingwen Zhang and Bingyang Cheng (totaling $5,000.00) pursuant to 15 U.S.C. §78u-4(a)(4) in connection with their representation of the Class. Courts regularly permit similar or larger awards to named plaintiffs. Fee Brief, part V. Plaintiff supervised and engaged with Lead Counsel during the pleading stage and throughout settlement negotiations, and kept abreast of developments in this case and with ChinaCache generally. They are skilled professionals who spent significant amounts of time working with Lead Counsel on this Action. *See* Szydlo Dec., Exhibits 4-5 (declarations of Jingwen Zhang and Bingyang Cheng). They deserve compensation for the time they have dedicated to representing the Settlement Class.

### 3.    The Parties Have No Other Agreements Besides Opt-Outs

Rule 23 requires that any agreement made in connection with the proposed Settlement be disclosed. Fed. R. Civ. P. 23(e)(2)(C)(iv). The Supplemental Agreement described in the Stipulation ¶ 35 gives Defendants the right to terminate the Settlement if Settlement Class Members holding more than a certain number of damaged shares opt out. Plaintiff disclosed the agreement and its essential terms in the Stipulation (¶35) and in Plaintiff's preliminary approval brief (Dkt. No. 74 at 15-16). It is only the supplemental agreement's exact terms—specifically, the number of shares that will trigger the right to terminate—that the parties have not disclosed to Settlement Class Members. Such agreements are standard provisions in securities class actions and ensure that Defendants are receiving finality, without affecting Settlement Class Members' rights under, or altering the substance or fairness of, the Settlement. This Supplemental Agreement poses no obstacle to final approval of the Settlement. *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006).

- 22 -

### 4. There Is No Preferential Treatment; the Proposed Plan of Allocation Treats Class Members Equitably

The Plan of Allocation will determine how the money is distributed between Authorized Claimants. The Settlement Fund is distributed *pro rata* to each Settlement Class member based on their recognized losses resulting from the stock price declines between April 10, 2015 through September 11, 2019 in response to the corrective disclosures. The Plan of Allocation is based in part on the same damages report Plaintiff used to estimate its maximum recoverable damages. Szydlo Dec. ¶19. It thus tracks Plaintiff's theory of the case. The Plan of Allocation will determine Plaintiff's recoveries just like every other Settlement Class Member, so they receive no preferential treatment.

### G. The Court Should Approve the Plan of Allocation

In the Preliminary Approval Order, the Court preliminarily approved the Notice and the Plan of Allocation outlined therein. Plaintiff now requests that the Court grant final approval of the Plan of Allocation for the purpose of administering the Settlement. Courts judge plans of allocation by the same metric as settlements as a whole: they must be "fair, reasonable and adequate." *Omnivision*, 559 F. Supp. 2d at 1045. Practically speaking, "[a]n allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005).

The proposed Plan of Allocation has a reasonable, rational basis. It distributes the settlement proceeds on a *pro rata* basis, calculating a claimant's relative loss proximately caused by Defendants' alleged misrepresentations and omissions, based on factors such as when and at what prices the claimant purchased and sold ChinaCache Securities. Plaintiff engaged a damages consultant to assist in developing a plan to allocate the Settlement proceeds among Authorized Claimants with the goal of reimbursing Settlement Class Members in a fair and reasonable manner. Szydlo Dec.

- 23 -

¶19. *See Riker*, 2010 WL 4366012, at *5 ("Class counsel has consistently consulted with experts throughout this litigation, and based on these consultations, has determined that the terms agreed upon in the settlement represent a fair, adequate, and reasonable settlement of plaintiffs' claims").

Because they tend to mirror the complaint's allegations in securities class actions, "plans that allocate money depending on the timing of purchases and sales of the securities at issue are common." *In re Datatec Sys., Inc. Sec. Litig.*, No. 04-CV-525 (GEB), 2007 WL 4225828, at *5 (D.N.J. Nov. 28, 2007); *see also In re Gen. Instrument Sec. Litig.*, 209 F. Supp. 2d 423, 431 (E.D. Pa. 2001) (deeming plan of allocation "even handed" where "claimants are to be reimbursed on a *pro rata* basis for their recognized losses based largely on when they bought and sold their shares of General Instrument stock"). Here, each authorized claimant will receive a *pro rata* share of the Net Settlement Fund (comprised of cash, plus interest, less Court-approved fees and expenses) based on the claimant's recognize loss as calculated in accordance with the Plan of Allocation detailed in the Notice. Szydlo Dec. ¶¶20-21.

There have been no objections and no valid exclusion requests from any potential Settlement Class Members, further supporting approval of the Plan of Allocation. Bravata Dec. ¶¶13-14; Szydlo Dec. ¶16. The Plan of Allocation fairly compensates Settlement Class Members and should be approved.

## V.   NOTICE TO THE SETTLMENT CLASS SATISFIED DUE PROCESS

Plaintiff has provided the Settlement Class with adequate notice of the Settlement in the manner and form directed and preliminarily approved by the Court. Plaintiff, through Lead Counsel and the Claims Administrator, mailed 23,337 copies of the Court-approved Notice to potential Settlement Class Members and their nominees who could be identified with reasonable effort. Bravata Dec. ¶7. One nominee sent 10,895 email notifications to their customers, including direct links to the Notice and Claims form on the Settlement website. *Id.* In addition, the Claims

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION, AND FINAL CERTIFICATION OF SETTLEMENT CLASS

Administrator published the Court-approved Notice online in *Investor's Business Daily*, and transmitted it over the *PR Newswire* on June 7, 2021. *Id.* ¶10. The Claims Administrator also published all information regarding the Settlement online on the Settlement website. *Id.* ¶12. This method of giving notice is appropriate because it directs notice in a "reasonable manner to all class members who would be bound by the propos[ed judgment]." Fed. R. Civ. P. 23(e)(1)(B).

The Notice provides all necessary information for Settlement Class Members to make an informed decision regarding the proposed Settlement. It "generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir. 2009). The Notice gave Settlement Class Members all the information they needed to decide whether to opt out, object, or file a claim. It told Settlement Class Members, among other things: (1) the amount of the Settlement; (2) why the parties propose the Settlement; (3) the estimated average recovery per damaged share; (4) the maximum amount of attorneys' fees and expenses that Lead Counsel would seek; (5) Lead Counsel's contact information; (6) that Settlement Class Members could object to the Settlement or exclude themselves from the Settlement Class, and the consequences thereof; and (7) the dates and deadlines for certain Settlement-related events. *See* 15 U.S.C. §78u-4(a)(7). The Notice further explained that the Net Settlement Fund would be distributed to eligible Settlement Class Members who submit valid and timely Proof of Claim forms under the Plan of Allocation as described in the Notice.

In sum, the Notice fairly apprised Settlement Class Members of their rights, is the best notice practicable under the circumstances, and complies with the Court's Preliminary Approval Order, Federal Rule of Civil Procedure 23, the PSLRA, and due process. *See*, *e.g.*, *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1170 (S.D.

- 25 -

Cal. 2007); *In re Portal Software, Inc. Sec. Litig.*, No. C-03-5138 VRW, 2007 WL 4171201, at *1 (N.D. Cal. Nov. 26, 2007) (approving similar notice program).

## VI.    CONCLUSION

For the foregoing reasons, the Court should: (a) grant final certification to the Settlement Class; (b) find that the notice plan complied with all applicable requirements; and (c) approve the Settlement and Plan of Allocation as fair, reasonable, and adequate.

Dated: July 23, 2021

Respectfully submitted,
**POMERANTZ LLP**
*/s/ Brenda Szydlo*
Jeremy A. Lieberman (admitted *pro hac vice*)
Brenda Szydlo (admitted *pro hac vice*)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: 212-661-1100
Facsimile: 917-463-1044
Email: jalieberman@pomlaw.com
Email: bszydlo@pomlaw.com

**POMERANTZ LLP**
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, CA 90024
Telephone: (310) 405-7190
Email: jpafiti@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South LaSalle Street, Suite 3505
Chicago, IL 60603
Telephone: 312-377-1181
Facsimile: 312-377-1184
Email: pdahlstrom@pomlaw.com

- 26 -

*Counsel for Lead Plaintiff and the Proposed Settlement Class*

**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen (SBN 219683)
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Additional Counsel for Lead Plaintiff*

- 27 -

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL
APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION, AND FINAL CERTIFICATION OF
SETTLEMENT CLASS

## CERTIFICATE OF SERVICE

I hereby certify that on July 23, 2021, a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF System.

/s/Brenda Szydlo

Brenda Szydlo

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION, AND FINAL CERTIFICATION OF SETTLEMENT CLASS