**POMERANTZ LLP**
Jeremy A. Lieberman (admitted *pro hac vice*)
Brenda Szydlo (admitted *pro hac vice*)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: 212-661-1100
Facsimile: 917-463-1044
Email: jalieberman@pomlaw.com
Email: bszydlo@pomlaw.com

*Counsel for Lead Plaintiff and*
*the Proposed Settlement Class*

[Additional counsel on signature page]

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM LIKAS, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>CHINACACHE INTERNATIONAL HOLDINGS LTD., SONG WANG, GUANGSHENG MENG, FENGYE GAO, and JING AN,<br><br>Defendants. | No.: 2:19-cv-06942-JWH-SS<br><br>CLASS ACTION<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND EXPENSES AND AWARDS TO PLAINTIFF**<br><br>Date: August 27, 2021<br>Time: 9:00 a.m.<br>Courtroom: 2<br>Judge: Hon. John W. Holcomb |

# **TABLE OF CONTENTS**

I.      INTRODUCTION..............................................................................................1

II.     CASE BACKGROUND .....................................................................................4

III.    THE COURT SHOULD AWARD ATTORNEYS' FEES OF 33.3%
        OF THE COMMON FUND..............................................................................4

        A.      Lead Counsel Are Entitled to a Fee Award from the
                Common Fund...................................................................................4

        B.      The Court Should Award Lead Counsel a Reasonable
                Percentage of the Common Fund.....................................................5

        C.      The Requested Attorneys' Fees are Reasonable and Merited ..................6

                1.      Lead Counsel Achieved a Fair, Adequate, and Reasonable
                        Result for the Settlement Class.....................................................7

                2.      The Risks and Complexity of the Litigation Support the
                        Requested Fee Amount..................................................................9

                3.      Lead Counsel Skillfully Managed This Case Against
                        Formidable Adversaries................................................................11

                4.      Lead Counsel Undertook a Significant Financial Risk ................13

                5.      Fee Awards in Similar Cases Further Support an Award
                        of 33.3% of the Settlement Fund ..................................................16

                6.      A Lodestar Crosscheck Shows the Requested Fee
                        Is Reasonable ...............................................................................17

                7.      The Settlement Class's Reaction Supports the Requested
                        Fee Award......................................................................................19

IV.     LEAD COUNSEL'S EXPENSES WERE REASONABLE AND
        NECESSARY TO ACHIEVE THE BENEFIT OBTAINED.........................20

V.      THE COURT SHOULD APPROVE THE AWARDS TO PLAINTIFF .........21

VI.     CONCLUSION ................................................................................................22

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
572 F.3d 221 (5th Cir. 2009) ...................................................................................9

*Armes v. Hot Pizzas, LLC*, No. CV-16-01152-PHX-JJT,
2017 U.S. Dist. LEXIS 89920 (D. Ariz. June 9, 2017) ...........................................3

*Atlas v. Accredited Home Lenders Holding Co.*, No. 07-CV-00488-H (CAB),
2009 WL 3698393 (S.D. Cal. Nov. 4, 2009)...........................................................7

*Bickley v. Schneider Nat'l Carriers, Inc.*, No. 4:08-cv-05806-JSW,
2016 WL 6910261 (N.D. Cal. Oct. 13, 2016) ...................................................7, 17

*Blum v. Stenson*,
465 U.S. 886 (1984)..................................................................................................5

*Cheng Jiangchen v. Rentech, Inc.*, No. CV 17-1490-GW(FFMX),
2019 WL 5173771 (C.D. Cal. Oct. 10, 2019) .............................................7, 11, 17

*City of Providence v. Aeropostale, Inc.*, No. 11 CIV. 7132 CM GWG,
2014 WL 1883494 (S.D.N.Y. May 9, 2014) .........................................................15

*Clesceri v. Beach City Investigations & Protective Servs., Inc.*,
No. CV-10-3873-JST RZX, 2011 WL 320998 (C.D. Cal. Jan. 27, 2011).............22

*Eminence Capital, LLC v. Aspeon, Inc.*,
316 F.3d 1048 (9th Cir. 2003) .................................................................................2

*Feller v. Transamerica Life Ins. Co.*, No. 16CV01378CASGJSX,
2019 WL 6605886 (C.D. Cal. Feb. 6, 2019) .........................................................19

*Fox v. Vice*,
563 U.S. 826 (2011).................................................................................................17

*Glass v. UBS Fin. Servs., Inc.*,
331 F. App'x 452 (9th Cir. 2009).............................................................................6

ii

*Glickenhaus & Co. v. Household Int'l, Inc.*,
  787 F.3d 408 (7th Cir. 2015) ............................................................................... 15

*Harris v. Marhoefer*,
  24 F.3d 16 (9th Cir. 1994) ................................................................................... 20

*Hartless v. Clorox Co.*,
  273 F.R.D. 630 (S.D. Cal. 2011) ......................................................................... 22

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983)............................................................................................... 7

*In re Activision Sec. Litig.*,
  723 F. Supp. 1373 (N.D. Cal. 1989)....................................................................... 5

*In re Am. Apparel, Inc. S'holder Litig.*, No. CV1006352MMMJCGX,
  2014 WL 10212865 (C.D. Cal. July 28, 2014) .................................... 11, 15, 16, 17

*In re Apollo Grp. Inc. Sec. Litig.*, No. 04-cv-2147-PHX,
  2012 WL 1378677 (D. Ariz. Apr. 20, 2012) ..................................................... 17, 18

*In re Atossa Genetics, Inc. Sec. Litig.*, No. 13-cv-01836-RSM,
  2018 WL 3546176 (W.D. Wash. July 20, 2018)..................................................... 17

*In re Audioeye, Inc., Sec. Litig.*, No. CV-15-00163-TUC-DCB,
  2017 WL 5514690 (D. Ariz. May 8, 2017) ............................................................ 17

*In re Banc of California Sec. Litig.*, No. SA CV 17-118 DMG,
  2020 WL 1283486 (C.D. Cal. Mar. 16, 2020) .................................................. 6, 17

*In re BP p.l.c. Sec. Litig.*,
  852 F. Supp. 2d 767 (S.D. Tex. 2012)................................................................... 10

*In re Brooktree Sec. Litig.*,
  915 F. Supp. 193 (S.D. Cal. 1996) ......................................................................... 5

*In re Genworth Fin. Sec. Litig.*,
  210 F. Supp. 3d 837 (E.D. Va. 2016) .................................................................... 17

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
  279 F.R.D. 151 (S.D.N.Y. 2011)............................................................................. 8

iii

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR
ATTORNEYS' FEES AND EXPENSES AND AWARDS TO PLAINTIFF

*In re Heritage Bond Litig.*, No. 2:02-ml-01475-RGK,
    2005 WL 1594403 (C.D. Cal. June 10, 2005)...................................................*passim*

*In re HP Inkjet Printer Litig.*,
    716 F.3d 1173 (9th Cir. 2013) ...............................................................................7

*In re Immune Response Sec. Litig.*,
    497 F. Supp. 2d 1166 (S.D. Cal. 2007) ............................................................20, 21

*In re K12 Inc. Sec. Litig.*, No. 4:16-cv-04069-PJH,
    2019 WL 3766420 (N.D. Cal. July 10, 2019) ...................................................7, 17

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) ...........................................................................6, 17

*In re Omnivision Techs., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2008)...........................................................*passim*

*In re Online DVD-Rental Antitrust Litig.*,
    779 F.3d 934 (9th Cir. 2015) ...................................................................................6

*In re Pac. Enters. Sec. Litig.*,
    47 F.3d 373 (9th Cir. 1995) .............................................................................9, 17

*In re Rite Aid Corp. Sec. Litig.*,
    396 F.3d 294 (3d Cir. 2005) ...................................................................................6

*In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions
    Act (FACTA) Litig.*, 295 F.R.D. 438 (C.D. Cal. 2014)....................................21, 22

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
    535 F. Supp. 2d 249 (D.N.H. 2007) .......................................................................18

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
    19 F.3d 1291 (9th Cir. 1994) ..................................................................4, 5, 9, 13

*Jenson v. First Trust Corp.*, No. 05-cv-3124 ABC,
    2008 WL 11338161 (C.D. Cal. June 9, 2008).............................................7, 10, 17

*Johnson v. US Auto Parts Network, Inc.*, No. CV07–2030–GW(JCx),
    2008 WL 11343481 (C.D. Cal. Oct. 9, 2008) ........................................................9

iv

*Knox v. Yingli Green Energy Holding Co. Ltd.*,
   136 F. Supp. 3d 1159 (C.D. Cal. 2015)..................................................................12

*Lopez v. Youngblood*, No. CV-F-07-0474 DLB,
   2011 WL 10483569 (E.D. Cal. Sept. 2, 2011) .........................................................5

*Nat'l Fed'n of the Blind v. Target Corp.*, No. C 06-01802 MHP,
   2009 WL 2390261 (N.D. Cal. Aug. 3, 2009) .........................................................14

*Ontiveros v. Zamora*,
   303 F.R.D. 356 (E.D. Cal. 2014).............................................................................20

*Pace v. Quintanilla*, No. SACV 14-2067-DOC,
   2014 WL 4180766 (C.D. Cal. Aug. 19, 2014) .......................................................12

*Paul, Johnson, Alston & Hunt v. Graulty*,
   886 F.2d 268 (9th Cir. 1989) ..............................................................................4, 6

*Robbins v. Koger Properties, Inc.*,
   116 F.3d 1441 (11th Cir. 1997) ..............................................................................15

*Romero v. Producers Dairy Foods, Inc.*, No. 1:05CV0484 DLB,
   2007 WL 3492841 (E.D. Cal. Nov. 14, 2007) .......................................................16

*Sawant v. Ramsey*, No. 3:07-CV-980 VLB,
   2012 WL 3265020 (D. Conn. Aug. 9, 2012)...........................................................15

*Singer v. Becton Dickinson & Co.*, No. 08-CV-821-IEG (BLM),
   2010 WL 2196104 (S.D. Cal. June 1, 2010) .......................................................6, 16

*Spann v. J.C. Penney Corp.*,
   211 F. Supp. 3d 1244 (C.D. Cal. 2016).............................................................18, 19

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007)...................................................................................................4

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
   669 F.3d 632 (5th Cir. 2012) .....................................................................................5

*Vincent v. Hughes Air W., Inc.*,
   557 F.2d 759 (9th Cir. 1977) .....................................................................................4

v

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND EXPENSES AND AWARDS TO PLAINTIFF

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ..........................................................................*passim*

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005) .........................................................................................5

*Yedlowski v. Roka Bioscience, Inc.*, No. 14-CV-8020-FLW-TJB,
    2016 WL 6661336 (D.N.J. Nov. 10, 2016) ............................................................. 10

## <u>Statutes</u>

Private Securities Litigation Reform Act ...........................................................*passim*

vi

Lead Plaintiff The ChinaCache Investor Group (consisting of plaintiffs Jingwen Zhang and Bingyang Cheng) ("Lead Plaintiff" or "Plaintiff") submits this memorandum in support of its motion for attorneys' fees, reimbursement of expenses, and awards to Plaintiff.

## I.   INTRODUCTION

The Parties reached a Settlement to resolve this Action for $1,800,000.[1] The Settlement is a favorable result, as it recovers between 9% and 41% of recoverable damages despite significant risk.[2] Having achieved this guaranteed cash recovery for the Settlement Class, Lead Counsel seeks an award of attorneys' fees of 33.3% of the Settlement Amount, or $599,400, plus interest, reimbursement of expenses incurred of $67,262.89, plus interest, and Awards to each of the two plaintiffs in the The ChinaCache Investor Group of $2,500, or $5,000 in total, to be paid from the Settlement Fund.[3]

---

[1] Unless otherwise defined herein, capitalized terms take the same meaning provided in Stipulation and Agreement of Settlement dated December 15, 2020 ("Settlement" or "Stipulation") (Dkt. No. 75-1). Internal citations and quotations are omitted and emphasis is added unless otherwise noted. Citations to the "Szydlo Dec." are to the Declaration of Brenda Szydlo In Support Of Plaintiff's Motions For (1) Final Approval Of Proposed Class Action Settlement; And (2) Attorneys' Fees, Reimbursement Of Expenses, And Awards To Plaintiff, filed herewith. Citations to "Bravata Dec." are to the Declaration of Josephine Bravata, attached as Exhibit 1 to the Szydlo Dec. Citations to "Szydlo Fee Dec." are to the second Declaration of Brenda Szydlo, attached as Exhibit 2 to the Szydlo Dec. Citations to "Rosen Fee Dec." are to the Declaration of Laurence Rosen, attached as Exhibit 3 to the Szydlo Dec. Citations to "Final Approval Brief" are to the Memorandum of Points and Authorities in support of Plaintiff's motion for final approval of the Settlement, filed herewith.

[2] Under an aggressive damages analysis, the recovery is approximately 9% of damages, and under a more conservative damages analysis, the recovery is approximately 41% of damages.

[3] The Notice informed the Settlement Class that Lead Counsel would apply to the Court for an award of attorneys' fees for all Plaintiff's Counsel in an amount not to exceed 33.3% of the Settlement Fund plus interest.  Lead Counsel intends to share part of any

- 1 -

Litigants who create a common fund for the benefit of a class are entitled to an award of attorneys' fees and reimbursement of expenses from the common fund. Plaintiff and Plaintiff's Counsel have clearly bestowed a substantial common benefit upon the Settlement Class Members here. Through their efforts, Settlement Class Members will share substantial monetary relief, which satisfies the requirements of the common fund doctrine and entitles Lead Counsel to an award of attorneys' fees from the Settlement Fund.

The Parties reached the Settlement only after protracted negotiations. The arm's-length negotiations resulted in the favorable Settlement. This Settlement is particularly beneficial to the Settlement Class Members in light of the many risks inherent in this litigation against a China-based issuer, including: the amount of potentially recoverable damages; the Settling Defendants' potential defenses; the risks of prosecuting this litigation through trial; the ability and willingness of Settling Defendants, which are located in China and have no assets in the U.S., to pay a judgment out of pocket; and potential insurmountable barriers to recovery relating to the collectability of a U.S. judgment in China due to the lack of any treaty regarding recognizing and enforcing judgments between the U.S. and China.

In obtaining this result, Lead Counsel took on substantial risk. The Private Securities Litigation Reform Act ("PSLRA") imposes procedural obstacles to alleging securities fraud, and its pleading standards in particular are "not [] easy [] to comply with," *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). Despite the risks, however, Lead Counsel was able to obtain this fair, adequate, and reasonable recovery for the Settlement Class.

Federal courts therefore have long recognized that fee awards in successful cases, such as this one, encourage the prosecution of other actions on behalf of

attorneys' fees awarded by the Court with The Rosen Law Firm and The HAO Law Firm, in accordance with their level of contribution to the initiation, prosecution, and resolution of the Action.

- 2 -

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND EXPENSES AND AWARDS TO PLAINTIFF

individuals with valid claims, and thereby promote private enforcement of, and compliance with, important areas of federal and state law, including the federal securities laws. Fee awards, such as those requested in this action, encourage "capable attorneys, who otherwise could be paid regularly by hourly-rate clients, to devote their time to complex, time-consuming cases for which they may never be paid." *See*, *e.g.*, *Armes v. Hot Pizzas, LLC*, No. CV-16-01152-PHX-JJT, 2017 U.S. Dist. LEXIS 89920, at *12-13 (D. Ariz. June 9, 2017).

In the Ninth Circuit, courts typically determine attorneys' fees as a percentage of the common fund. The main factors courts consider in setting the percentage award are the quality of the result, the risk undertaken, and the settlement class's reaction. Courts also cross-check the award against the time and effort counsel expended. Here, each of these metrics weighs in favor of awarding Lead Counsel attorneys' fees of 33.3% of the Settlement Amount.

The Settlement Class approves of Lead Counsel's work. Objections and requests for exclusion are not due until August 6, 2021, but to date no Settlement Class Member has objected to the fee request, or any aspect of the Settlement, and no Settlement Class Member has submitted any valid  exclusion from the Settlement. *See* Bravata Dec. ¶¶13-14; Szydlo Dec. ¶16.

Lead Counsel also seeks reimbursement of out-of-pocket litigation expenses incurred in connection with the prosecution of this action in the amount of $67,262.89, plus interest.  These expenses, including court filings fees, expert fees, travel expenses and administrative expenses, were reasonable and necessary for the successful prosecution of the Action.

Finally, Plaintiff seeks awards of $2,500 each (or a total of $5,000) for plaintiffs Jingwen Zhang and Bingyang Cheng, the plaintiffs who comprise the ChinaCache Investor Group, for their time spent in carrying out their obligations in the Action. The requested awards are reasonable in light of the time plaintiffs have spent in connection

- 3 -

with this Action on behalf of investors, and in line with awards granted in similar matters.

## II.    CASE BACKGROUND

A summary of Plaintiff's allegations and the procedural history of this Action are set forth in the Final Approval Brief, Part II, filed concurrently herewith.

## III.    THE COURT SHOULD AWARD ATTORNEYS' FEES OF 33.3% OF THE COMMON FUND

### A.    Lead Counsel Are Entitled to a Fee Award from the Common Fund

"[A] private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees." *Vincent v. Hughes Air W., Inc.*, 557 F.2d 759, 769 (9th Cir. 1977). The purpose of this doctrine is to avoid unjust enrichment. "[T]hose who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it." *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994) ("*WPPSS*"). "The amount of such a reward is that which is deemed 'reasonable' under the circumstances." *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 271 (9th Cir. 1989).

Reasonable fee awards are necessary in securities class actions. The Supreme Court has "long recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions brought [] by the Department of Justice and the Securities and Exchange Commission." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007); *Halliburton Co. v. Erica P. John Fund, Inc.*, No. 13-317, Brief for the United States as Amicus Curiae Supporting Respondent, at 1-2. *Tellabs* and *Halliburton* were both class actions alleging securities fraud. Attorneys' fee awards were necessary to provide incentives for private lawyers to file those actions, and one is necessary here for the same reasons.

- 4 -

**B.** **The Court Should Award Lead Counsel a Reasonable Percentage of the Common Fund**

Under the "common fund doctrine" a reasonable fee may be based on "a percentage of the fund bestowed on the class." *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984). District courts in the Ninth Circuit have discretion to award fees in common fund cases based on either the "lodestar/multiplier" method or the percentage-of-the-fund method. *WPPSS*, 19 F.3d at 1295-96. "Despite this discretion, use of the percentage method in common fund cases appears to be dominant." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008).

Among other benefits, the percentage-of-the-fund method "aligns the interests of class counsel and the class, rather than rewarding attorneys for hours spent on cases, as the lodestar method does." *In re Brooktree Sec. Litig.*, 915 F. Supp. 193, 196 (S.D. Cal. 1996); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050, n.5 (9th Cir. 2002) (affirming 28% fee, representing 3.65 multiplier, disfavoring lodestar for incentivizing lawyers to generate more hours and not to settle early). The percentage method also "provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 122 (2d Cir. 2005). The percentage method also preserves judicial resources by sidestepping time-consuming lodestar analysis while saving the Settlement Class from the delays necessitated by the Court's review. *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1375 (N.D. Cal. 1989); *Lopez v. Youngblood*, No. CV-F-07-0474 DLB, 2011 WL 10483569, at *4 (E.D. Cal. Sept. 2, 2011) ("the lodestar method is difficult to apply [and] time consuming to administer.").

Finally, the PSLRA provides that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a ***reasonable percentage*** of the amount" recovered for the class. 15 U.S.C. §78u-4(a)(6). "Part of the reason behind the near-universal adoption of the percentage method in securities cases is that the PSLRA contemplates such a calculation." *Union Asset Mgmt. Holding A.G. v. Dell,*

- 5 -

*Inc.*, 669 F.3d 632, 643 (5th Cir. 2012); *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005).

For these reasons the Court should award attorneys' fees based on the percentage-of-recovery method. The Court should use an informal lodestar cross-check only to assess the reasonableness of the percentage award. *See Vizcaino*, 290 F.3d at 1050, n.5 (using lodestar as "a cross-check on the reasonableness of a percentage figure"); *Glass v. UBS Fin. Servs., Inc.*, 331 F. App'x 452, 456 (9th Cir. 2009) ("the district court properly performed an informal lodestar cross-check").

### C.    The Requested Attorneys' Fees are Reasonable and Merited

In the Ninth Circuit, 25% is the "benchmark" award for attorneys' fees. *See e.g.*, *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015); *Paul, Johnson*, 886 F.2d at 273. Nonetheless, a court "may adjust the benchmark when special circumstances indicate a higher or lower percentage would be appropriate." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (affirming a one-third percent fee award). "In most common fund cases, the award exceeds that benchmark." *Omnivision*, 559 F. Supp. 2d at 1047; *accord In re Heritage Bond Litig.*, No. 2:02-ml-01475-RGK, 2005 WL 1594403, at *19 & n.14 (C.D. Cal. June 10, 2005) (noting that "courts in this circuit, as well as other circuits, have awarded attorneys' fees of 30% or more in complex class actions[,]" and granting fees of one third of fund).

Indeed, courts in this Circuit have not hesitated to award 33.3% in securities class actions *See*, *e.g.*, *Heritage Bond*, 2005 WL 1594403, at *19 (awarding one-third of the fund, and collecting cases awarding one third of the fund); *Singer v. Becton Dickinson & Co.*, No. 08-CV-821-IEG (BLM), 2010 WL 2196104, at *8 (S.D. Cal. June 1, 2010) (awarding 33.33% of common fund, and collecting cases, noting that "the request for attorneys' fees in the amount of 33.33% of the common fund falls within the typical range of 20% to 50% awarded in similar cases"); *see also In re Banc*

- 6 -

*of California Sec. Litig.*, No. SA CV 17-118 DMG (DFMx), 2020 WL 1283486, at *1 (C.D. Cal. Mar. 16, 2020) (awarding 33% fee request); *Cheng Jiangchen v. Rentech, Inc.*, No. CV 17-1490-GW(FFMX), 2019 WL 5173771, at *7 (C.D. Cal. Oct. 10, 2019) (approving one-third fee award); *In re K12 Inc. Sec. Litig.*, No. 4:16-cv-04069-PJH, 2019 WL 3766420, at *1 (N.D. Cal. July 10, 2019) (approving 33% attorneys' fees).

Factors that courts use to determine whether the requested percentage is fair and reasonable include: (1) the results achieved; (2) the risk and complexity of the litigation; (3) the skill required; (4) the quality of work performed; (5) the contingent nature of the fee and the financial burden; (6) awards made in similar cases; (7) the reaction of the class; and (8) the lodestar cross-check. *See Vizcaino*, 290 F.3d at 1047; *Omnivision*, 559 F. Supp. 2d at 1046. Of course, "[t]he relative degree of importance to be attached to any particular factor will depend upon ... the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Atlas v. Accredited Home Lenders Holding Co.*, No. 07-CV-00488-H (CAB), 2009 WL 3698393, at *3 (S.D. Cal. Nov. 4, 2009). Here, each of these factors supports awarding attorneys' fees of 33.3% of the common fund.

### 1.     Lead Counsel Achieved a Fair, Adequate, and Reasonable Result for the Settlement Class

Courts have consistently recognized that the ultimate result achieved is a major factor to be considered in making a fee award. *See*, *e.g.*, *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("most critical factor is the degree of success obtained"); *In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1178 (9th Cir. 2013) (tethering fee award "to the value of the class recovery"); *Bickley v. Schneider Nat'l Carriers, Inc.*, No. 4:08-cv-05806-JSW, 2016 WL 6910261, at *4 (N.D. Cal. Oct. 13, 2016) (awarding one-third for attorneys' fees for "substantial monetary recovery"); *Jenson v. First Trust Corp.*, No. 05-cv-3124 ABC, 2008 WL 11338161, at *12 (C.D. Cal. June 9, 2008) (awarding one-third fee request where counsel achieved "highly favorable outcome"); *Heritage*,

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND EXPENSES AND AWARDS TO PLAINTIFF

2005 WL 1594403, at *19 ("significant results achieved" weighed "strongly in favor" of one-third fee award).

The Settlement value, totaling $1,800,000 in cash, plus interest, constitutes between 9% and 41% of estimated damages. Had it continued to litigate, Plaintiff would have pursued the most aggressive damages approach, under which Plaintiff contends that damages could have been as high as $19,800,000, but this calculation relied on a much more difficult legal theory based on multi-day loss causation and the absence of confounding news. Szydlo Dec. ¶27. Under the more conservative, less speculative approach, Plaintiff's view of maximum estimated damages was approximately $4,400,000. The Settlement provides a reasonable recovery under either analysis.

As a percentage of the total estimated damages, the Settlement Amount is above the median percentage of investor losses recovered in securities class action settlements. *See Omnivision*, 559 F. Supp. 2d at 1042 (approving 6% recovery of maximum damages) (citing *In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at *8-9 (C.D. Cal. June 10, 2005) (average recovery between 2% to 3% of maximum damages)); *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 162–63 (S.D.N.Y. 2011) ("the average settlement in securities class actions ranges from 3% to 7% of the class' total estimated losses").

According to Cornerstone Research, between 2011 and 2019, cases with maximum damages of less than $25 million, like this one, settled for a median of 16.8% of total damages. In 2020, the median recovery of potential damages was 19.7%. Laarni T. Bulan and Laura E. Simmons, *Securities Class Action Settlements: 2020 Review and Analysis*, at 6 (Cornerstone Research 2021).[4] The recovery here is in line

---

[4] *Available at* https://www.cornerstone.com/Publications/Reports/Securities-Class-Action-Settlements-2020-Review-and-Analysis.

- 8 -

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR
ATTORNEYS' FEES AND EXPENSES AND AWARDS TO PLAINTIFF

with—and using the more conservative damages estimate, far exceeds—the results in typical securities litigation settlements over the past decade.

### 2. The Risks and Complexity of the Litigation Support the Requested Fee Amount

The requested fee is also reasonable because Lead Counsel obtained a favorable result even though it faced substantial risks, heightened by the fact that they were litigating against Chinese defendants against whom Plaintiff might not be able to enforce a judgment even if successful at trial because China does not recognize U.S. judgments. *See In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (fees were justified "because of the complexity of the issues and the risks."); *Vizcaino*, 290 F.3d at 1048 ("Risk is a relevant circumstance"); *WPPSS*, 19 F.3d at 1299-1301.

Securities class actions are often complex, difficult to prove, and risky. *Heritage Bond*, 2005 WL 1594389, at *6. As this district court has noted, "a number of courts have commented on the difficulty and uncertainty of maintaining a securities class action." *Johnson v. US Auto Parts Network, Inc.*, No. CV07–2030–GW(JCx), 2008 WL 11343481, at *3 (C.D. Cal. Oct. 9, 2008) (Wu, J.) (collecting cases). "[T]o be successful, a securities class-action plaintiff must thread the eye of a needle made smaller and smaller over the years by judicial decree and congressional action." *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009).

This case was no exception. From the outset, Lead Counsel understood it was embarking on a complex, expensive, and likely lengthy litigation with no guarantee of ever being compensated for the substantial investment of time and money the case would require.[5]

---

[5] Plaintiff's Final Approval Brief more fully sets out the risks Plaintiff would continue to face had it continued the litigation. Final Approval Brief, part IV(A).

- 9 -

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND EXPENSES AND AWARDS TO PLAINTIFF

As discussed in greater detail in the Final Approval Brief, at Section IV.A, there were many substantial challenges to succeeding in this litigation and to obtaining a common fund recovery.

*First*, the most immediate risk was that Plaintiff's claims were subject to the PSLRA's stringent pleading standards. As a court observed in dismissing securities claims brought against BP following the Deepwater Horizon disaster, "[t]he Court is acutely aware that federal legislation and authoritative precedents have created for plaintiffs in all securities actions formidable challenges to successful pleading." *In re BP p.l.c. Sec. Litig.*, 852 F. Supp. 2d 767, 820 (S.D. Tex. 2012). "Legal precedents are continually making it more difficult to plead securities class actions," so courts have awarded higher fees in securities actions. *Yedlowski v. Roka Bioscience, Inc.*, No. 14-CV-8020-FLW-TJB, 2016 WL 6661336, at *21 (D.N.J. Nov. 10, 2016). While Plaintiff believes its arguments opposing Defendants' motion to dismiss would be strong, the Court could still find absence of actionable misstatements or omissions by Defendants regarding the 2014 Sale/Leaseback Deal and anti-corruption practices or absence of scienter on the part of Defendant An.

*Second*, even if Plaintiff were to defeat the motion to dismiss and successfully obtain class certification, Plaintiff would have a substantial barrier for conducting cross-border discovery. It is notoriously difficult for foreign litigants to obtain discovery in China. Szydlo Dec. ¶28. The cost associated with translation, interpretation, and engagement of Chinese-English bilingual attorneys to review produced files would also be exceedingly expensive. *Id.*

*Third,* the Settlement Class faced risks of obtaining class certification and successfully continuing the litigation through the trial. While Plaintiff and Lead Counsel believed in the merits of Plaintiff's claims, there would be many challenges in establishing all of the requisite elements and a substantial risk that Plaintiff might not be able to do so. The arguments raised by Defendants could have materially reduced

- 10 -

the amount of recoverable damages and adversely affected any potential recovery. Recovering $1.8 million in cash, representing between 9% and 41% of Plaintiff's estimated damages, in the face of these substantial risks fully supports the requested fee.

Finally, even if Lead Counsel were successful at trial and obtained a judgment against Defendants, Plaintiff would face a severe risk of not collecting the judgment. ChinaCache is based in China, and its assets are primarily in China. Defendant An is a Chinese national. There is no bilateral treaty between the U.S. and China regarding recognizing and enforcing judgment. Up to now, China has never recognized or enforced any U.S. class action judgment in its jurisdiction. Collecting a judgment against the Settling Defendants in China would have been time-consuming and highly likely to be unsuccessful. Without a settlement, there exists the real possibility that Plaintiff would spend years litigating the case to a verdict, and recover nothing due to the lack of foreign judgment enforcement mechanism in China.

For these reasons, among others, fee awards in securities class actions commonly meet or exceed the 33.3% benchmark. *Omnivision*, 559 F. Supp. 2d at 1047.

### 3.   Lead Counsel Skillfully Managed This Case Against Formidable Adversaries

The skill required to litigate the case and the quality of work performed support a high fee award. "The prosecution and management of a complex national class action requires unique legal skills and abilities. This is particularly true in securities cases because the Private Securities Litigation Reform Act makes it much more difficult for securities plaintiffs to get past a motion to dismiss." *Rentech, Inc.*, No. CV 17-1490-GW(FFMX), 2019 WL 5173771, at *10; *see also In re Am. Apparel, Inc. S'holder Litig.*, No. CV1006352MMMJCGX, 2014 WL 10212865, at *22 (C.D. Cal. July 28, 2014) (similar); *Omnivision*, 559 F. Supp. 2d at 1047 ("The 'prosecution and management of a complex national class action requires unique legal skills and

- 11 -

abilities.' This is particularly true in securities cases because the [PSLRA] makes it much more difficult for securities plaintiffs to get past a motion to dismiss.").

Here, Pomerantz LLP ("Pomerantz"), the Court-appointed Lead Counsel, is among the most experienced and skilled practitioners in the securities litigation field, and the firm has a long and successful track record in securities cases throughout the country, including within this Circuit. *See* Szydlo Dec. ¶36 and Szydlo Fee Declaration, Exhibit A  (Pomerantz Firm Resume). Lead Counsel's reputation as experienced counsel in complex cases, and its persistent efforts and thorough investigation greatly enhanced Lead Counsel's ability to negotiate the Settlement. Pomerantz has amassed the skills and experience needed to prosecute this case through decades of experience litigating and successfully settling many securities class actions. *See*, *e.g.*, *In re Petrobras Sec. Litig.*, No. 14-cv-9662, Opinion and Order, at 17, (ECF No. 428, February 2, 2016) (Pomerantz is "qualified, experienced and able to conduct the litigation."). In 2018, Pomerantz, as sole Lead Counsel for the class, achieved a historic $3 billion settlement, the largest class action settlement in a decade and the largest settlement ever in a class action involving a foreign issuer. *See In re Petrobras Sec. Litig.*, No. 14-cv-9662, Opinion and Order, at 1, (ECF No. 834, June 25, 2018). Additionally, courts have also consistently found The Rosen Law Firm, P.A. ("Rosen"), Additional Counsel in this Action, to be well suited as class counsel in securities class actions. *See*, *e.g.*, *Pace v. Quintanilla*, No. SACV 14-2067-DOC, 2014 WL 4180766, at *3 (C.D. Cal. Aug. 19, 2014) ("The Rosen Law Firm has appeared before this Court several times before, and the Court is confident that it has the necessary skill and knowledge to effectively prosecute this action"); *Knox v. Yingli Green Energy Holding Co. Ltd.*, 136 F. Supp. 3d 1159, 1165 (C.D. Cal. 2015) ("The Rosen Law Firm is "highly qualified [and] experienced" in securities class actions").

Lead Counsel's skills and experience first came into play early on in this case when it obtained an order allowing for service on counsel and electronic service of

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR
ATTORNEYS' FEES AND EXPENSES AND AWARDS TO PLAINTIFF

process on the Company and Defendant Gao located in China after Lead Counsel, with the assistance of Additional Counsel, conducted a thorough review of Chinese public records, located the electronic contact information for the Company and Gao and established to the Court the two Defendants' usage of the electronic contact means. Dkt. 35. Ultimately, this order led to ChinaCache's appearance in this Action. Dkt. No. 38. Lead Counsel also conducted a thorough investigation of the claims and drafted a highly detailed Amended Complaint.

Lead Counsel also participated in vigorous, protracted, arm's-length settlement negotiations overseen by an experienced mediator, including one full-day mediation. Final Approval Brief at 4; Szydlo Dec. ¶6. The mediation involved extensive presentations by Plaintiff and Defendants analyzing the legal and factual nuances of the case. Lead Counsel's extensive efforts and skill leading to the Settlement strongly support the requested fee. Lead Counsel also researched and drafted, in part, Plaintiff's opposition to Defendants' motion to dismiss the Amended Complaint. Szydlo Dec. ¶ 33.

"[T]he quality of opposing counsel is [also] important in evaluating the quality of Plaintiff's counsel's work." *Heritage Bond*, 2005 WL 1594403, at *20. Here, the Settling Defendants retained Quinn Emanuel Urquhart and Sullivan LLP ("Quinn Emanuel"), one of the world's premier law firms with an exemplary securities practice. They staffed the case with talented and experienced lawyers and advocated forcefully for their clients. Szydlo Dec. ¶38. That Lead Counsel achieved a favorable Settlement in the face of such formidable opposition weighs in favor of the requested fee.

### 4. Lead Counsel Undertook a Significant Financial Risk

The risk of receiving little or no recovery is a major factor in awarding attorneys' fees. *See WPPSS*, 19 F.3d at 1299; *Heritage Bond*, 2005 WL 1594389, at *14 ("The risks assumed by Class Counsel, particularly the risk of non-payment or reimbursement of expenses, is a factor in determining counsel's proper fee award.").

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND EXPENSES AND AWARDS TO PLAINTIFF

Unlike counsel for Defendants, who are typically paid an hourly rate and paid for their expenses on a regular basis, Plaintiff's Counsel have not been compensated for any time or expense since this case began in 2019. Courts have consistently recognized that the risk of receiving little or no recovery is a major factor in considering an award of attorneys' fees. For example, in awarding attorneys' fees in *Nat'l Fed'n of the Blind v. Target Corp.*, No. C 06-01802 MHP, 2009 WL 2390261, at *7 (N.D. Cal. Aug. 3, 2009), the court noted the risks that plaintiffs' counsel had taken:

> Risk of non-payment is also an issue to be considered. 'A contingent fee must be higher than a fee for the same legal services paid as they are performed. The contingent fee compensates the lawyer not only for the legal services he renders but for the loan of those services.' [internal citations omitted] 'The purpose of a fee enhancement, or so-called multiplier, for contingent risk is to bring the financial incentives for attorneys enforcing important constitutional rights . . . into line with incentives they have to undertake claims for which they are paid on a fee-for-services basis.'

While securities cases have always been complex and difficult to prosecute, the PSLRA has only increased the difficulty in successfully prosecuting a securities class action. The risk of no recovery in complex cases of this type is very real. A study of securities class actions filed between 1997 and 2018, after passage of the PSLRA, found that 43% of the cases filed were dismissed in defendants' favor. *See Securities Class Action Case Filings, 2019 Year in Review* at 16 (Cornerstone Research 2020). Additionally, in 2019, about one-third of securities cases reached a settlement, but dismissals outnumbered settlements by more than two to one. Janeen McIntosh and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2019 Full-Year Review* at 9, Figure 6 (NERA Feb. 2020).

The risks do not end at the motion to dismiss stage. There are numerous contingent fee cases where plaintiffs' counsel, after the expenditure of thousands of hours, have received no compensation. Plaintiff's Counsel are aware of many hard-fought lawsuits where, because of the discovery of facts unknown when the case was

- 14 -

commenced, or changes in the law during the pendency of the case, or a decision of a judge or jury following a trial on the merits, excellent professional efforts of the Plaintiff's Counsel produced no fee for counsel. Even plaintiffs who get past summary judgment and succeed at trial may find a judgment in their favor overturned on appeal or on a post-trial motion. *See*, *e.g.*, *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408, 433 (7th Cir. 2015) (ordering new trial on issues relating to loss causation in phase one of bifurcated trial after years of litigation in which plaintiffs prevailed in both phases at trial). In fact, even when a plaintiff is successful at trial, payment is not guaranteed. *See Robbins v. Koger Properties, Inc.*, 116 F.3d 1441 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs against an accounting firm reversed on appeal on loss causation grounds and judgment entered for defendant). In *Sawant v. Ramsey*, No. 3:07-CV-980 VLB, 2012 WL 3265020 (D. Conn. Aug. 9, 2012), plaintiffs' counsel spent thousands of hours securing a trial verdict only to find it impossible to collect on the judgment.

The risks in this case were no different. Pomerantz's and Rosen's fees were entirely contingent, so the only certainty was that there would be no fee without a successful result and that such a result would only be realized after significant amounts of time, effort and expense had been expended. *See* Szydlo Dec. ¶41. Pomerantz and Rosen risked non-payment of **1,214.72** hours of professional time, as well as cash expenses of $67,262.89, for two years to bring this case to a successful conclusion. *See* Szydlo Fee Dec. *and* Rosen Fee Dec. (summarizing Lead Counsel's and Additional Counsel's lodestar and expenses in further detail). "This type of substantial outlay, when there is a risk that no money will be recovered, further supports the award of the requested fees." *Am. Apparel*, 2014 WL 10212865, at *22; *see also City of Providence v. Aeropostale, Inc.*, No. 11 CIV. 7132 CM GWG, 2014 WL 1883494, at *14 (S.D.N.Y. May 9, 2014) ("the financial burden on contingent-fee counsel is far greater than on a firm that is paid on an ongoing basis").

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR
ATTORNEYS' FEES AND EXPENSES AND AWARDS TO PLAINTIFF

What is more, and as discussed above, even if Plaintiff and Lead Counsel could obtain a judgment, Lead Counsel would likely face significant, if not insurmountable hurdles in collecting a judgment from the Settling Defendants in China. *See* Final Approval Brief, at Section IV.A.4.

Because the fee in this matter was entirely contingent, the only certainties were that there would be no fee without a successful result and that such a result would be realized only after considerable and difficult effort. Lead Counsel committed enormous resources of both time and money to the vigorous and successful prosecution of this litigation for the benefit of the Settlement Class. The contingent nature of counsel's representation strongly favors approval of the requested fee.

**5.    Fee Awards in Similar Cases Further Support an Award of 33.3% of the Settlement Fund**

Courts often look to fees awarded in comparable cases to determine if the fee requested is reasonable. *See Vizcaino,* 290 F.3d at 1050 n.4. "[I]n most common fund cases, the award exceeds [the] benchmark." *Omnivision*, 559 F. Supp. 2d at 1047. "This is particularly true in securities class actions." *Am. Apparel*, 2014 WL 10212865, at *23; *see also Romero v. Producers Dairy Foods, Inc.*, No. 1:05CV0484 DLB, 2007 WL 3492841, at *4 (E.D. Cal. Nov. 14, 2007) (approving a fee award of 33% of the common fund, and noting that "[e]mpirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery"). Courts in the Ninth Circuit commonly award fees of one third of the settlement funds. *See*, *e.g.*, *Heritage Bond*, 2005 WL 1594403, at *19 (awarding one-third of the fund, and collecting cases awarding one third of the fund). *See also Singer v. Becton Dickinson & Co.*, No. 08-CV-821-IEG (BLM), 2010 WL 2196104, at *8 (S.D. Cal. June 1, 2010) (awarding 33.33% of common fund, and collecting cases, noting that "the request for attorneys' fees in the amount of 33.33% of the common fund falls within the typical range of 20% to 50% awarded in similar

- 16 -

cases"); *Mego*, 213 F.3d at 463 (affirming award of one-third of the total recovery); *Pac. Enters.*, 47 F.3d at 379 (affirming 33% fee award); *In re Banc of California Sec. Litig.*, No. SA CV 17-118 DMG (DFMx), 2020 WL 1283486, at *1 (awarding 33% fee request); *Rentech, Inc.*, No. CV 17-1490-GW(FFMX), 2019 WL 5173771, at *7 (approving one-third fee award); *In re K12 Inc. Sec. Litig.*, No. 4:16-cv-04069-PJH, 2019 WL 3766420, at *1 (approving 33% attorneys' fees).[6] Lead Counsel's present fee request is therefore consistent with fee award percentages awarded in this Circuit.

### 6.   A Lodestar Crosscheck Shows the Requested Fee Is Reasonable

"In cases where courts apply the percentage-of-the-fund method to calculate fees, they should use a rough calculation of the lodestar as a cross-check to assess the reasonableness of the percentage award." *Am. Apparel*, 2014 WL 10212865, at *20; *Vizcaino*, 290 F.3d at 1050 ("the lodestar may provide a useful perspective on the reasonableness of a given percentage award"). Courts calculate lodestar by assessing attorneys' hourly rates for reasonableness and multiplying the rates by the number of hours reasonably spent, and then cross-checking the resulting number against the fee award. *In re Genworth Fin. Sec. Litig.*, 210 F. Supp. 3d 837, 845 (E.D. Va. 2016). "In securities class actions, it is common for a counsel's [lodestar] figure to be adjusted upward by some multiplier reflecting a variety of factors such as the effort expended by counsel, the complexity of the case, and the risks assumed by counsel." *Heritage Bond*, 2005 WL 1594403, at *22.

When using the lodestar to calculate attorney fee awards, "trial courts need not, and indeed should not, become green-eyeshade accountants." *Fox v. Vice*, 563 U.S.

---

[6] *In re Atossa Genetics, Inc. Sec. Litig.*, No. 13-cv-01836-RSM, 2018 WL 3546176, at *1 (W.D. Wash. July 20, 2018) (same); *In re Audioeye, Inc., Sec. Litig.*, No. CV-15-00163-TUC-DCB, 2017 WL 5514690, at *4 (D. Ariz. May 8, 2017) (same); *Bickley*, 2016 WL 6910261, at *4 (same); *In re Apollo Grp. Inc. Sec. Litig.*, No. 04-cv-2147-PHX, 2012 WL 1378677, at *7 (D. Ariz. Apr. 20, 2012) (same); *Jenson*, 2008 WL 11338161, at *11 (same).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND EXPENSES AND AWARDS TO PLAINTIFF

826, 838 (2011). When the lodestar is merely used as a cross-check, "the focus is not on the necessity and reasonableness of every hour of the lodestar, but on the broader question of whether the fee award appropriately reflects the degree of time and effort expended by the attorneys." *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 270 (D.N.H. 2007). Thus, "an itemized statement of legal services is not necessary for an appropriate lodestar cross-check." *In re Apollo Grp. Inc. Sec. Litig.*, No. CV 04-2147-PHX-JAT, 2012 WL 1378677, at *7 (D. Ariz. Apr. 20, 2012). Here, the lodestar method – whether used directly or as a "cross-check" on the percentage method – strongly supports the reasonableness of the requested fee.

Here, Lead Counsel dedicated 962.48 hours of professional time prosecuting this Litigation from its inception through July 23, 2021. Szydlo Fee Dec. ¶¶5-6. Lead Counsel's total lodestar, based on its attorneys' current rates, is $665,431.00. *Id.* Additional Counsel dedicated 252.24 hours of professional time prosecuting this Litigation from its inception through July 23, 2021.[7] Rosen Fee Dec. ¶¶5-6. Additional Counsel's total lodestar, based on its attorneys' current rates, is $177,184.50. *Id.* The total hours spent by Lead Counsel and Additional Counsel on the case are **1,214.72** hours. The total lodestar of Lead Counsel and Additional Counsel on the case are **$842,615.50**. Accordingly, the requested fee of 33.3% of the Settlement Amount, which equates to approximately $599,400, represents a 0.711 negative multiplier--*i.e.*, would not fully compensate counsel. This is below the multiplier range of one to four frequently used as a crosscheck. *Spann v. J.C. Penney Corp.*, 211 F. Supp. 3d 1244, 1265 (C.D. Cal. 2016). Given the excellent results achieved in this securities fraud action, Plaintiff's Counsel's 1,214.72 hours support the reasonableness of the fee

---

[7] In addition to the time expended to date, Lead Counsel and Additional Counsel will spend additional time preparing Plaintiff's reply in support of final approval, preparing for and attending the final approval hearing, directing the claims administration process, and filing a motion for final distribution, but will not seek further compensation. Szydlo Dec. ¶37.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR
ATTORNEYS' FEES AND EXPENSES AND AWARDS TO PLAINTIFF

request. *See*, *e.g.*, *id.* ("Counsel's lodestar yields a 3.07 multiplier, which is well within the range for reasonable multipliers."); *Feller v. Transamerica Life Ins. Co.*, No. 16CV01378CASGJSX, 2019 WL 6605886, at *13 (C.D. Cal. Feb. 6, 2019) (2.97 multiplier "well-within the range of appropriate multipliers recognized by this Court and by other courts within the Ninth Circuit."). The lodestar crosscheck, therefore, supports Plaintiff's request for 33.3% in attorneys' fees from the common fund.

### 7. The Settlement Class's Reaction Supports the Requested Fee Award

"The existence or absence of objectors to the requested attorneys' fee is a factor in determining the appropriate fee award." *Heritage Bond*, 2005 WL 1594403, at *21 *see also Omnivision*, 559 F. Supp. 2d at 1048. The Claims Administrator mailed 23,337 Notice and Claim Forms and emailed two links for the Notice and Claim Form to potential Settlement Class Members. The Claims Administrator was also notified by one nominee that 10,895 additional customers received email notifications from the nominee including direct links to the Notice and Claim Form on the settlement website. Bravata Dec. ¶7. The Claims Administrator also published the Summary Notice on *Investor's Business Daily* and transmitted it over the *PR Newswire*. *Id.* ¶10. The Notice and Summary Notice each directed potential Settlement Class Members to where they could access the full-length Notice, which was also posted on a Settlement-specific website. The Notice informed Settlement Class Members that Lead Counsel would seek attorneys' fees of up to 33.3% of the Settlement Amount, plus interest, and litigation expenses, plus interest, in an amount not to exceed $120,000, and that Lead Counsel may seek an application for reimbursement of the reasonable costs and expenses incurred by Plaintiff directly related to its representation of the Settlement Class. The notices advised Settlement Class Members of their right to object to any of these requests for relief or request exclusion from the Settlement and explained how to do so.

- 19 -

The deadline for potential Settlement Class Members to submit objections and requests for exclusion is August 6, 2021. To date, no Settlement Class Member has objected to the requested attorneys' fees or reimbursement of expenses, or submitted a valid request for exclusion from the Settlement. Bravata Dec. ¶¶13-14; Szydlo Dec. ¶16. The positive reaction of the Settlement Class strongly supports the fee request. *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007) ("The lack of objection from any Class Member supports the attorneys' fees award").

## IV.    LEAD COUNSEL'S EXPENSES WERE REASONABLE AND NECESSARY TO ACHIEVE THE BENEFIT OBTAINED

"[A]n attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation expenses from that fund." *Ontiveros v. Zamora*, 303 F.R.D. 356, 375 (E.D. Cal. 2014). The Notice informed potential Settlement Class Members that Lead Counsel would seek expenses, plus interest, in an amount not to exceed $120,000. Lead Counsel requests reimbursement of $67,262.89, plus interest, which includes $59,903.33 incurred by Pomerantz, and  $7,359.56 incurred by Rosen, in prosecuting this Action.  This amount is well within the maximum amount described in the Notice. Szydlo Fee Dec. ¶7. These expenses are the types that are routinely charged to fee-paying clients. *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994); *see also Immune Response*, 497 F. Supp. 2d at 1177.

Lead Counsel pursued this litigation knowing that it could recover its expenses only if Plaintiff and the putative Class prevailed at trial and survived on appeal or reached a settlement. Szydlo Dec. ¶47. Lead Counsel had no incentive to incur, and did not incur, unnecessary expenses. All of Lead Counsel's expenses were reasonably incurred and necessary for the prosecution of this litigation. *Id.* ¶49-50; Szydlo Fee Dec. ¶7; Rosen Fee Dec. ¶7. The bulk of the expenses incurred by Lead Counsel and Additional Counsel consisted of fees for a damages expert, a mediator and an investigator, and notice to class members. Szydlo Fee Dec. ¶7. Lead Counsel retained

- 20 -

an investigator to investigate ChinaCache's alleged misconduct, which was crucial for prosecuting this Action. The damages expert was needed to analyze potential damages so that Lead Counsel could properly evaluate and negotiate the Settlement. Lead Counsel and the Settling Defendants' counsel jointly retained the mediator and shared the fee. The remainder of Lead Counsel's expenses consisted primarily of court filing fees, online legal research fees, travel fees, and other miscellaneous expenses. *Id*. Courts have held that these and similar types of expenses are properly charged to the Settlement Class. *See Katz*, 2013 WL 11237202, at *8. The categories of expenses for which Lead Counsel here seek reimbursement are the type routinely billed to hourly clients and, therefore, should be paid out of the common fund.

## V.    THE COURT SHOULD APPROVE THE AWARDS TO PLAINTIFF

The Court should also award $2,500 each (for a total of $5,000) to plaintiffs Jingwen Zhang and Bingyang Cheng, who together are Lead Plaintiff The ChinaCache Investor Group, for the time they spent representing the Settlement Class. The PSLRA empowers courts to grant awards to reimburse plaintiffs for reasonable costs and expenses related to the representation of the class. *See* 15 U.S.C. §78u-4(a)(4); H.R. Conf. Rep. No. 369, 104th Cong., 1st Sess. 35 (1995) ("The Conference Committee recognizes that lead plaintiffs should be reimbursed for reasonable costs and expenses associated with service as lead plaintiff, including lost wages, and grants the courts discretion to award fees accordingly."). Such awards are "intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 472 (C.D. Cal. 2014).

Throughout this litigation, both plaintiffs were available to Lead Counsel and Additional Counsel as needed and performed their duties with attentiveness and

- 21 -

diligence. They: (1) volunteered to file a motion seeking appointment as lead plaintiff; (2) reviewed complaints, motion papers and other pleadings; (3) regularly communicated and corresponded with counsel regarding the litigation and settlement; and (4) gathered and produced information to Lead Counsel concerning their ChinaCache investments. The Declarations of Jingwen Zhang and Bingyang Cheng, attached to the Szydlo Dec. as Exhibits 4 and 5, respectively, outline the time and tasks Plaintiff devoted to this litigation. As shown in their declarations, they were actively involved and put the concerns of the Settlement Class at the forefront. These are the kinds of activities that warrant reimbursement for plaintiffs for their time and efforts expended on the Settlement Class's behalf.

The Notice informed Settlement Class Members that Lead Counsel would seek reimbursement of the reasonable costs and expenses incurred by them directly related to its representation of the Settlement Class. To date, no objections have been raised in response to these requests. Bravata Decl. ¶14; Szydlo Dec. ¶16.

Courts in this Circuit routinely award representative plaintiffs similar or greater amounts. *See*, *e.g.*, *Toys R Us-Delaware*, 295 F.R.D. at 472 (approving $5,000 award); *Clesceri v. Beach City Investigations & Protective Servs., Inc.*, No. CV-10-3873-JST RZX, 2011 WL 320998, at *2 (C.D. Cal. Jan. 27, 2011) (approving award of $3,333.33); *Hartless v. Clorox Co.*, 273 F.R.D. 630 (S.D. Cal. 2011) (approving an award of $4,000 to one named plaintiff and $2,000 to another).

Plaintiffs Jingwen Zhang and Bingyang Cheng dedicated their own valuable time, faithfully representing the Settlement Class. Here, the requested awards to them are reasonable, amounting to a modest percentage of the Settlement Fund. The Court should award the requested amounts to plaintiffs.

## VI. CONCLUSION

For the foregoing reasons, the Court should award attorneys' fees of 33.3% of the Settlement, or $599,400, plus interest, and expenses of $67,262.89, plus interest.

- 22 -

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND EXPENSES AND AWARDS TO PLAINTIFF

The Court should also award plaintiffs Jingwen Zhang and Bingyang Cheng $2,500 each, for a total of $5,000.

Dated: July 23, 2021                    Respectfully submitted,

                                        **POMERANTZ LLP**
                                        */s/ Brenda Szydlo*
                                        Jeremy A. Lieberman (admitted *pro hac vice*)
                                        Brenda Szydlo (admitted *pro hac vice*)
                                        600 Third Avenue, 20th Floor
                                        New York, New York 10016
                                        Telephone: 212-661-1100
                                        Facsimile: 917-463-1044
                                        Email: jalieberman@pomlaw.com
                                        Email: bszydlo@pomlaw.com

                                        **POMERANTZ LLP**
                                        Jennifer Pafiti (SBN 282790)
                                        1100 Glendon Avenue, 15th Floor
                                        Los Angeles, CA 90024
                                        Telephone: (310) 405-7190
                                        Email: jpafiti@pomlaw.com

                                        **POMERANTZ LLP**
                                        Patrick V. Dahlstrom
                                        10 South LaSalle Street, Suite 3505
                                        Chicago, IL 60603
                                        Telephone: 312-377-1181
                                        Facsimile: 312-377-1184
                                        Email: pdahlstrom@pomlaw.com

                                        *Counsel for Lead Plaintiff and the Proposed Settlement Class*

                                        **THE ROSEN LAW FIRM, P.A.**
                                        Laurence M. Rosen (SBN 219683)
                                        355 South Grand Avenue, Suite 2450
                                        Los Angeles, CA 90071

- 23 -

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR
ATTORNEYS' FEES AND EXPENSES AND AWARDS TO PLAINTIFF

Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Additional Counsel for Lead Plaintiff*

- 24 -

## CERTIFICATE OF SERVICE

I hereby certify that on July 23, 2021, a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF System.

*/s/Brenda Szydlo*

Brenda Szydlo

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND EXPENSES AND AWARDS TO PLAINTIFF