**POMERANTZ LLP**
Jeremy A. Lieberman (admitted *pro hac vice*)
Brenda Szydlo (admitted *pro hac vice*)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: 212-661-1100
Facsimile: 917-463-1044
Email: jalieberman@pomlaw.com
Email: bszydlo@pomlaw.com

*Counsel for Lead Plaintiff and
the Proposed Settlement Class*

[Additional counsel on signature page]

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM LIKAS, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> CHINACACHE INTERNATIONAL HOLDINGS LTD., SONG WANG, GUANGSHENG MENG, FENGYE GAO, and JING AN, <br><br> Defendants. | No.: 2:19-cv-06942-JWH-SS <br><br> <u>CLASS ACTION</u> <br><br> **DECLARATION OF BRENDA SZYDLO IN SUPPORT OF PLAINTIFF'S MOTIONS FOR (1) FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT; AND (2) ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARDS TO PLAINTIFF** |

DECLARATION OF BRENDA SZYDLO IN SUPPORT OF PLAINTIFF'S MOTIONS FOR (1) FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT; AND (2) ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARDS TO PLAINTIFF

I, Brenda Szydlo, declare as follows:

1.    I am an attorney duly licensed to practice law in New York, and I have been admitted *pro hac vice* in this Action. I am Of Counsel at Pomerantz LLP, court-appointed Lead Counsel in the Action. I have personal knowledge of the matters set forth herein and, if called upon, I could and would completely testify thereto.

2.    I submit this declaration in support of Lead Plaintiff The ChinaCache Investor Group's[1] Motions for: (1) final approval of the proposed Settlement of this Action; and (2) attorneys' fees, reimbursement of expenses, and awards to Plaintiff, filed concurrently herewith.[2] This Declaration demonstrates why the Settlement is fair, reasonable, and adequate and should be approved by the Court, and why Pomerantz's requests for attorneys' fees, reimbursement of expenses, and awards to Plaintiff are reasonable and should be approved by the Court.

3.    The Settlement creates a gross settlement fund of $1,800,000, plus accrued interest. After attorneys' fees, reimbursement of expenses, awards to Plaintiff, and claims administration costs, the remaining funds ("Net Settlement Fund") will be distributed to a Settlement Class consisting of all persons who purchased ChinaCache Securities between April 10, 2015 and May 17, 2019, both dates inclusive.[3]

---

[1] Hereinafter referred to as Lead Plaintiff or Plaintiff.

[2] All capitalized terms not otherwise defined herein shall have the same meanings set forth in the Stipulation and Agreement of Settlement dated December 15, 2020 ("Settlement" or "Stipulation") (Dkt. No. 75-1).

[3] Excluded from the Settlement Class are Defendants, the present and former officers and directors of ChinaCache and any subsidiary thereof, and the Immediate Family members, legal representatives, heirs, successors or assigns of such excluded persons and any entity in which any such excluded person has or had a controlling interest during the Settlement Class Period. Also excluded from the Settlement Class are any persons and entities who or which exclude themselves by submitting a valid and timely request for exclusion and persons and entities with no compensable losses.

- 1 -

DECLARATION OF BRENDA SZYDLO IN SUPPORT OF PLAINTIFF'S MOTIONS FOR (1) FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT; AND (2) ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARDS TO PLAINTIFF

## I.   RELEVANT BACKGROUND AND PROCEDURAL HISTORY

4.    On June 12, 2019, a class action complaint was filed in U.S. District Court for the Southern District of New York, styled *Sun v. ChinaCache International Holdings Ltd. et al.*, No. 1:19-cv-05485 (S.D.N.Y. Jun 12, 2019) (the "New York Action"). On August 9, 2019, the initial complaint in this action was filed in the United States District Court for the Central District of California, styled *Likas v. ChinaCache International Holdings Ltd. et al.*, 2:19-cv-06942. On August 30, 2019, the plaintiff in the New York Action filed a voluntary dismissal. (*See* New York Action, Dkt. No. 16).

5.    On October 2, 2019, the Honorable Fernando M. Olguin appointed The ChinaCache Investor Group as Lead Plaintiff for the Action and approved Lead Plaintiff's selection of Pomerantz LLP as Lead Counsel. (Dkt. No. 25).

6.    On April 24, 2020, the parties jointly submitted a stipulation informing the Court of an upcoming mediation. (Dkt. No. 42). Beginning in April 2020, the Parties engaged in arm's-length settlement negotiations for months. On June 18, 2020, Lead Counsel and Settling Defendants' Counsel participated in a full-day virtual mediation session before a highly experienced third-party mediator, David Murphy of Phillips ADR (the "Mediator"). The Parties were unable to reach an agreement to settle the Action during the mediation. The Parties, however, continued their arm's-length settlement negotiation afterwards while they concurrently proceeded with this Action.

7.    On July 9, 2020, Plaintiff filed its Amended Complaint. (Dkt. No. 45).

8.    On October 6, 2020, Settling Defendants filed the Motion to Dismiss the Amended Complaint. (Dkt. No. 67).

9.    With the Motion to Dismiss pending, on October 28, 2020, the Parties reached an agreement in principle to settle the Action for a cash payment by or on behalf of Defendants of $1,800,000 for the benefit of the Settlement Class.

10.   The Parties formalized the settlement in the Stipulation on December 15, 2020 and filed the Motion for Preliminary Approval of Settlement on the same date.

- 2 -

11. On April 26, 2021, the Court entered an order preliminarily approving the Settlement and directing the provision of notice. (Dkt. No. 84).

## II. OVERVIEW OF THE SETTLEMENT NEGOTIATIONS

12. Counsel for the Parties began settlement discussions while Plaintiff was conducting investigations and reviewing the public statements of defendant ChinaCache International Holdings Ltd. ("ChinaCache" or "Company") for the purpose of drafting the Amended Complaint. Settlement discussions continued between counsel at the motion to dismiss stage. After Defendants filed their motion to dismiss and while Plaintiff was in the process of drafting its opposition brief, the Parties finally reached a settlement in principle in October 2020 and finalized it in December 2020.

13. In the opinion of the lawyers at my firm who worked on this case, the Settlement is a fair, reasonable, and adequate result for the Settlement Class. The Settlement confers a benefit on the Settlement Class, eliminating the risk of continued litigation under circumstances where a more favorable outcome is less likely. Additionally, the Plan of Allocation is a fair and reasonable method for distributing the proceeds of the Settlement to Settlement Class Members. The Court should approve both the Settlement and the Plan of Allocation.

14. As set forth herein and in the accompanying memorandum in support of Plaintiff's motion for final approval of the Settlement ("Final Approval Brief"), the Settlement represents between approximately 9% and 41% of Plaintiff's estimate of recoverable damages – should all the claims alleged survive to trial, should a class be certified, should a jury adopt the expert damages model of Plaintiff, should Defendants have the ability to pay such a judgment and should Plaintiff be able to enforce a favorable U.S. judgment in China. A guaranteed cash settlement that provides a substantial benefit in the face of these challenges – not to mention the appeals that would likely be filed should Plaintiff prevail – is a favorable outcome. In light of these

- 3 -

DECLARATION OF BRENDA SZYDLO IN SUPPORT OF PLAINTIFF'S MOTIONS FOR (1) FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT; AND (2) ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARDS TO PLAINTIFF

circumstances, and especially when the Settlement is the product of comprehensive legal and factual investigation and arm's-length negotiations by experienced counsel, there is ample support for a finding that the Settlement is fair, reasonable, and adequate.

15.    For litigating this case on a contingency basis and negotiating this settlement, Lead Counsel requests a fee of 33.3% of the Settlement Fund, or $599,400, plus interest, and reimbursement of litigation expenses, which is $67,262.89, plus interest. This fee request is within the reasonable range of percentages typically awarded in securities class actions in the Ninth Circuit.

16.    The favorable reaction of the members of the Settlement Class also supports the reasonableness of the Settlement and the fee request. Pursuant to the Notice, exclusion requests and objections to the Settlement must be received by August 6, 2021. To date, neither Lead Counsel nor the Claims Administrator have received any valid requests for exclusion or objections to any aspect of the Settlement. [4] *See* Declaration of Josephine Bravata Concerning (A) Mailing of The Notice and Claim; (B) Publication of The Summary Notice; and (C) Report on Requests For Exclusion and Objections ("Bravata Dec.") ¶¶13-14. [5] If Lead Counsel or the Claims Administrator receives any objection or exclusion request, Plaintiff will address them in their reply papers in support of final approval.

**III.    NOTICE PROCEDURES**

17.    At Lead Counsel's direction, and pursuant to the Court's Preliminary Approval Order, on June 7, 2021, Strategic Claims Services ("SCS" or "Claims Administrator") published the Summary Notice on the *Investor's Business Daily* and

---

[4] One potential Settlement Class Member submitted an invalid request for exclusion to the Claims Administrator on July 2, 2021, without providing the information required by the Preliminary Approval Order. As of the date of this final approval motion, this potential Settlement Class Member still has not provided the required information. Thus, his request for exclusion is still deemed invalid. Bravata Dec. ¶13, Exhibit D.

[5] A true and correct copy of the Bravata Dec. is attached hereto as Exhibit 1.

- 4 -

transmitted it over the *PR Newswire*. Bravata Dec. ¶10. The Claims Administrator also published the Notice, Proof of Claim and Release Form ("Claim Form"), Stipulation, and Preliminary Approval Order on SCS's Settlement-specific website on May 13, 2021. *Id.* ¶12.

18. To date, SCS has mailed 23,337 Notice and Claim Forms to potential Settlement Class Members, and emailed two links for the Notice and Claim Form. *Id.* ¶7. On May 12, 2021, SCS caused a letter to be mailed or e-mailed to the 1,230 nominees contained in the SCS master mailing list. The letter notified them of the Settlement and requested that they, within 7 calendar days from the date of the letter, either (a) send a Notice and Claim Form to their customers who may be beneficial purchasers/owners, (b) email a copy of the Notice and Claim Form or a link to the Notice and Claim Form supplied by SCS to beneficial purchasers/owners; or (c) provide SCS with a list of the names, mailing addresses, and email addresses of such beneficial owners so that SCS could promptly mail the Notice and Claim Form or email a link to the Notice and Claim Form directly to them. A copy of the letter sent to these nominees is attached as Exhibit B to the Bravata Dec. *Id.* ¶5. Following these mailings, SCS received additional names and addresses of potential Settlement Class Members from individuals or nominees requesting that a Notice and Claim Form be mailed by SCS, and SCS received requests from nominees for Notice and Claim Forms so that the nominees could forward them to their customers. *Id.* ¶6. Further, one nominee notified SCS that it emailed a total of 10,895 Notices to their customers, notifying them of the Settlement and providing direct electronic links to the Notice and Claim Form on the settlement website website. *Id.* ¶7.

## IV.  PLAN OF ALLOCATION

19. Pursuant to the Preliminary Approval Order, the Notice fully described the proposed Plan of Allocation. *See* Dkt. No. 75-3 (proposed Notice) ¶44-48. Lead Counsel created the proposed Plan of Allocation after consulting with Plaintiff's expert

- 5 -

and the Claims Administrator, designing it to reimburse Settlement Class Members in a fair and reasonable manner. The Plan of Allocation is based in part on the same damages report Plaintiff used to estimate its maximum recoverable damages, and it closely tracks Plaintiff's theory of the case.

20.     If approved, the Plan of Allocation will govern how the proceeds of the Net Settlement Fund will be distributed among Settlement Class Members who timely submit appropriate Claim Forms. Pursuant to the Plan of Allocation, the Claims Administrator, under the direction of Lead Counsel, will determine each claimant's *pro rata* share of the Net Settlement Fund based upon each claimant's Recognized Loss. Each similarly situated authorized claimant will receive a *pro rata* share of the Recognized Losses attributed to their claim, with that share to be determined by the ratio that the authorized claimant's allowed claim bears to the total allowed claims of all authorized claimants.

21.     The Plan of Allocation is tailored to compensate the losses of the Settlement Class Members equitably and is based upon time periods during the Class Period when various corrective disclosures occurred, consistent with loss causation principles of *Dura Pharma. Inc., v. Broudo*, 544 U.S. 336 (2005).

## V.     THE FAIRNESS AND REASONABLENESS OF THE SETTLEMENT

22.     The proposed Settlement is the culmination of careful, economical litigation followed by protracted arm's length settlement negotiations. The parties reached the Settlement after Lead Counsel had thoroughly investigated the case and filed the operative Amended Complaint, consulted with a damages expert, and reviewed Defendants' motion to dismiss.

23.     Lead Counsel, who are experienced securities class action attorneys, evaluated the prospects of obtaining a better result if the case were to go forward, taking into account the risks of this case surviving on the pleadings, at summary judgment, at the class certification stage, and at trial, the Company's financial position, and other

DECLARATION OF BRENDA SZYDLO IN SUPPORT OF PLAINTIFF'S MOTIONS FOR (1) FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT; AND (2) ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARDS TO PLAINTIFF

factors related to collectability of any settlement or judgment. Plaintiff faced multiple procedural hurdles and significant merit-based risks involved with protracted litigation. Lead Counsel carefully considered each of these risks before agreeing to the Settlement.

24.     Although Lead Counsel believes that Plaintiff's claims are meritorious and sufficiently pleaded, there is no certainty that Plaintiff would defeat Defendants' motion to dismiss. The Settling Defendants argued the lack of falsity and loss causation as to the Settling Defendants and additionally, lack of scienter as to Defendant An. Plaintiff faced the risk that the Court may have found that that ChinaCache's statements about the 2014 Sale/Leaseback Deal and anti-corruption practices were not actionably false or misleading. The Court could have also found that Defendant An did not make any actionable misstatements under Section 10(b) because Plaintiff failed to allege that Defendant An participated in, or exercised authority over, such misstatements.

25.     Plaintiff also faced the risk that the Court would find that it had not adequately pleaded facts supporting a strong inference that Defendant An acted with scienter.  The Court could have found that Plaintiff pleaded no facts that Defendant An was aware of the alleged bribery or misconduct at the Company, or that she was connected to any investigations alleged in the Amended Complaint. The Court may have found that Plaintiff did not adequately allege that Defendant An made any statement  with the requisite mental state.

26.     Plaintiff also faced the challenge of obtaining class certification and establishing market efficiency. Achieving class certification would have involved a "battle of the experts" and was fraught with uncertainty and risk, as Plaintiff could not be assured that the fact finder would credit the testimony of Plaintiff's expert over Defendants' expert. Based on Lead Counsel's experience, a market efficiency expert would likely cost between $70,000 and $100,000. If the Court did not certify the class, it is unlikely that any individual investor or group of investors would have filed

- 7 -

individual claims to recover their damages from purchasing ChinaCache Securities as it would be uneconomical for them to bring individual cases.

27.     Plaintiff also faced the risk of establishing the proper amount of damages. Estimating aggregate damages can be challenging due to, among other things, assumptions that must be made regarding trading activity. Plaintiff's damages expert calculated that damages ranged between $4,400,000 and $19,800,000, depending on how aggressive the calculation, assuming Plaintiff prevailed on all its claims. If Plaintiff had continued to litigate, Plaintiff would have pursued the most aggressive damages calculation possible, under which damages could have been as high as $19,800,000. This approach relied on a legal theory that would be much more difficult to prove in an efficient market, based on multi-day loss causation and the absence of confounding news. Defendants would, of course, contend that damages are lower, or zero. Based on Lead Counsel's experience, retaining an expert to opine and testify as to loss causation and damages would cost at least several hundred thousand dollars.

28.     Discovery would also be costly and time consuming. Plaintiff would likely need to review thousands of documents and take several depositions of Defendants, ChinaCache employees, and third parties. Given that most of the relevant documents and witnesses are in China, and it is notoriously difficult for foreign litigants to obtain discovery in China, this would be difficult. Because most of the relevant documents would probably be in Chinese and many of the witnesses can only testify in Chinese, the cost associated with translation, interpretation, and engagement of Chinese-English bilingual attorneys to review produced files would be exceedingly expensive. Further, since the Class Period began in 2015 and depositions would not start until at least well into late 2021 or even 2022, it is possible that evidence could be lost because as time passes memories fade and it would be a challenge to obtain useful deposition or in-person testimony.

- 8 -

DECLARATION OF BRENDA SZYDLO IN SUPPORT OF PLAINTIFF'S MOTIONS FOR (1) FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT; AND (2) ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARDS TO PLAINTIFF

29.     Even if Plaintiff succeeded in getting discovery and obtaining a favorable judgment at trial, Plaintiff would still have to defeat any applicable appeals and enforce the judgment. ChinaCache is based in China, and its assets are primarily in China. Defendant An is a Chinese national. Judgments obtained in the United States are not enforceable in China. China does not have the class action mechanism in its legal system. Up to now, China has never recognized or enforced any U.S. class action judgment in its jurisdiction. Therefore, even if Plaintiff obtained a judgment against the Settling Defendants, there is a substantial risk that Plaintiff would be unable to collect any of the judgment. Without a settlement, there exists the real possibility that Plaintiff would spend years litigating the case to a verdict, and recover nothing due to the lack of a foreign judgment enforcement mechanism in China.

## VI.     THE FEE APPLICATION IS FAIR AND REASONABLE

30.     The Notice informed Settlement Class Members of Lead Counsel's intent to apply for an award of attorneys' fees in an amount not to exceed 33.3% of the Settlement Fund, plus interest, and for reimbursement of counsel's litigation expenses, plus interest, in an amount not to exceed $120,000. Bravata Dec., Ex. A. As set forth in the Memorandum in support of Plaintiff's motion for attorneys' fees, reimbursement of expenses, and awards to Plaintiff, filed herewith ("Fee Brief"), 33.3% of the common fund that counsel's efforts created falls in line with similar awards that courts in this circuit have granted.

31.     Lead Counsel achieved a favorable result for the Settlement Class at risk and expense to themselves. Throughout this litigation, Lead Counsel was committed to the interests of the Settlement Class and invested the time and resources necessary to resolve the Settlement Class' claims. As a result of this Settlement, Settlement Class Members will receive compensation for their losses and avoid the risk of no recovery at all.

- 9 -

DECLARATION OF BRENDA SZYDLO IN SUPPORT OF PLAINTIFF'S MOTIONS FOR (1) FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT; AND (2) ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARDS TO PLAINTIFF

*Lead Counsel's Work and Expertise*

32.     Lead Counsel took this case on a contingency basis, with no assurance of success or receiving any compensation. During the PSLRA-mandated discovery stay, Lead Counsel reviewed ChinaCache's public filings and statements during the alleged Class Period, as well as other news reports and public information relating to ChinaCache and to China's investigation and prosecution of ChinaCache's briberies. As part of confidential settlement negotiations,  Defendants provided to Plaintiff certain non-public financial information on a strictly confidential basis.  So informed, Plaintiff was better able to judge the strength of its claims, the adequacy of the Settlement, and the fairness and adequacy of the Plan of Allocation. Through its investigation, Lead Counsel determined the scope of the claims Plaintiff could bring, including the appropriate Class Period, corrective disclosures, and the corresponding misrepresentations and/or omissions. Ultimately, Lead Counsel ably synthesized these facts into a compelling Amended Complaint.

33.     Lead Counsel also reviewed Defendants' motion to dismiss, researched the applicable law, and drafted, in part, Plaintiff's opposition to the motion. As a result of these efforts, Plaintiff and Lead Counsel thoroughly understood the claims, merits, and weaknesses of the Action when they decided to enter the proposed Settlement.

34.     The total amount of time expended by attorneys and professional staff employed by Lead Counsel is 962.48 hours. The total amount of time expended by attorneys and professional staff employed by the Rosen Law Firm, P.A. ("Rosen"), Additional Counsel to Plaintiff, is 252.24 hours. In total, the law firms expended **1,214.72** hours in prosecuting the Action. This number is derived from the time records that Pomerantz and Rosen regularly maintained. A listing of the professionals at Pomerantz and Rosen who worked on this matter, the number of hours spent by each such professional, and their hourly rates is set forth in detail in the Declaration of Brenda Szydlo on Behalf of Pomerantz LLP Concerning Attorneys' Fees and Expenses

- 10 -

("Szydlo Fee Declaration") ¶5 and the Declaration of Laurence M. Rosen on Behalf of The Rosen Law Firm, P.A. Concerning Attorneys' Fees and Expenses ("Rosen Fee Declaration") ¶5.[6] The total value of the services performed in this case by Pomerantz and Rosen, based upon our current rates, is $665,431.00, and $177,184.50, respectively, for a grand total of **$842,615.50**.

35.    If Lead Counsel's request of 33.3% of the Settlement as attorneys' fees is granted, Lead Counsel would receive a fee of $599,400. This fee award would represent a lodestar negative multiplier of approximately 0.711 --*i.e.*, it would not fully compensate counsel. This fractional multiplier is materially below other multipliers that courts in this Circuit typically awarded in securities class actions.

36.    As reflected in the firm resumes, Lead Counsel and Additional Counsel are experienced and skilled practitioners in the securities litigation field and have a successful track record in such securities, shareholder and other complex class action cases. *See* Pomerantz's Firm Resume, attached to the Szydlo Fee Declaration as Exhibit A; Rosen's Firm Resume, attached to the Rosen Fee Declaration as Exhibit A.

37.    Moreover, in addition to the time expended to date, Lead Counsel will expend additional time preparing Plaintiff's reply in support of final approval, preparing for and attending the final approval hearing, directing the claims administration process, and filing a motion for final distribution, and will not seek additional compensation for this work.

### *The Caliber of Opposing Counsel*

38.    Quinn Emanuel Urquhart and Sullivan LLP ("Quinn Emanuel"), represented Defendants. Quinn Emanuel is a respected defense firm with substantial securities litigation experience and resources. Defendants' counsel zealously advocated for their clients. In the face of this opposition, Plaintiff and Lead Counsel

---

[6] True and correct copies of the Szydlo Fee Declaration and the Rosen Fee Declaration are attached hereto as Exhibits 2 and 3, respectively.

DECLARATION OF BRENDA SZYDLO IN SUPPORT OF PLAINTIFF'S MOTIONS FOR (1) FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT; AND (2) ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARDS TO PLAINTIFF

were nevertheless able to develop a case that was sufficiently strong to persuade the Defendants to settle it on terms that were favorable to the Class.

### The Risks of Litigation and the Need to Ensure the Availability of Competent Counsel in High Risk, Contingent Securities Cases

39.     Lead Counsel and Additional Counsel undertook this class action on a contingency fee basis. I summarize above and further describe in the Final Approval Brief the risks counsel assumed in bringing these claims to a successful conclusion.

40.     Those risks are also relevant to an award of attorneys' fees. I describe in detail above and in the Fee Approval Brief the risks Lead Counsel and Additional Counsel assumed and the time and expenses it incurred without any payment.

41.     From the outset, Lead Counsel and Additional Counsel understood that they were embarking on a relatively complex, expensive, and probably lengthy litigation with no guarantee of being compensated for the investment of their time and money that the case would have required. Lead Counsel and Additional Counsel have received no compensation during the course of this litigation, pending since August 2019.

42.     The commencement of a class action does not guarantee a settlement. To the contrary, it takes hard work and diligence by skilled counsel to develop the facts and theories that are needed to sustain a complaint and to take a case to trial. Only as a result of such efforts will sophisticated defendants engage in serious settlement negotiations at meaningful levels.

43.     As a result of persistent efforts in the face of substantial risks and uncertainties, Lead Counsel and Additional Counsel achieved a fair, adequate, and reasonable recovery for the Settlement Class. In consideration of Lead Counsel' and Additional Counsel's efforts and the favorable result achieved, I believe that a 33.3% fee is reasonable and that the Court should approve it.

- 12 -

DECLARATION OF BRENDA SZYDLO IN SUPPORT OF PLAINTIFF'S MOTIONS FOR (1) FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT; AND (2) ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARDS TO PLAINTIFF

*The Reaction of the Class to the Requested Fee*

44.    As noted above, the Claims Administrator disseminated or caused to be disseminated over 34,234 Notices to potential Settlement Class members pursuant to the Court's Preliminary Approval Order. Bravata Dec. ¶7.

45.    The deadline for exclusion requests and objections is August 6, 2021. To date, neither Lead Counsel nor the Claims Administrator has received any valid exclusion requests or objections to any aspect of the Settlement, including the requested attorneys' fees. *See* Bravata Dec., ¶¶13-14.

## VII.    REIMBURSEMENT OF EXPENSES IS FAIR AND REASONABLE

46.    Lead Counsel has incurred $59,903.33 in litigation expenses in connection with the prosecution of the Action. Additional Counsel has incurred $7,359.56 in litigation expenses in connection with the prosecution of the Action. The total expenses of the two firms are $67,262.89. These expenses were reasonable and necessary for the prosecution of the Action.

47.    From the outset, counsel were aware that they might not recover any of their expenses, and, at the very least, would not recover anything until the case was successfully resolved. Lead Counsel and Additional Counsel also understood that, even assuming that the case was ultimately successful, reimbursement for expenses would not compensate them for the lost use of the funds they advanced to prosecute this action. Thus, Lead Counsel and Additional Counsel took significant steps to minimize expenses whenever practicable without jeopardizing the vigorous and efficient prosecution of the case.

48.    A listing of the expenses incurred by Pomerantz compiled from the regularly maintained records, are set forth in the Szydlo Fee Declaration, ¶7. A listing of the expenses incurred by Rosen compiled from the regularly maintained records, are set forth in the Rosen Fee Declaration, ¶7. The expenses incurred pertaining to this case are reflected in books and records of Pomerantz and Rosen which are prepared from

- 13 -

expense vouchers and check records and are an accurate record of the expenses incurred. They are also available, upon request, for inspection by the Court.

49. Litigation expenses for which Lead Counsel and Additional Counsel seeks reimbursement included expert consultant fees, transportation expenses, investigator fees, mediator fees, legal research fees, document retrieval fees, and filing fees. Each of these expenses were reasonable and necessary for the successful prosecution of this case. The damages expert performed a damages analysis so that Lead Counsel could properly evaluate and negotiate the Settlement.

50. In light of the relatively complex nature of securities class action litigation and the difficulties in pleading and ultimately proving liability, as well as proving loss causation and damages at trial, the litigation expenses incurred were reasonable and necessary to pursue the interests of the Class.

## VIII. NOMINAL AWARDS TO LEAD PLAINTIFF, THE CHINACACHE INVESTOR GROUP, ARE WARANTED

51. Lead Plaintiff, The ChinaCache Investor Group consisting of plaintiffs Jingwen Zhang and Bingyang Cheng, each seek awards of $2,500 for their time and effort overseeing this action pursuant to the PSLRA. The declarations of plaintiffs Jingwen Zhang and Bingyang Cheng outline the time they devoted to this litigation, including filing a lead plaintiff motion, review of pleadings, communicating regularly with counsel, and discussing the Settlement with counsel.[7] Plaintiffs Jingwen Zhang and Bingyang Cheng have been actively involved and put the concerns of the Class at the forefront.

---

[7] A true and correct copy of the Declaration of Jingwen Zhang is attached hereto as Exhibit 4. A true and correct copy of the Declaration of Bingyang Cheng is attached hereto as Exhibit 5.

- 14 -

DECLARATION OF BRENDA SZYDLO IN SUPPORT OF PLAINTIFF'S MOTIONS FOR (1) FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT; AND (2) ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARDS TO PLAINTIFF

52.     As explained in the Fee Brief, awards of similar magnitude are commonly awarded to lead plaintiffs in securities class actions. They are necessary to ensure that these plaintiffs are not made worse off for their service to the class.

53.     The awards to Plaintiffs Jingwen Zhang and Bingyang Cheng, totaling $5,000, are fair and reasonable.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 23, 2021.


                                        */s/ Brenda Szydlo*
                                        Brenda Szydlo

- 15 -

# **CERTIFICATE OF SERVICE**

I hereby certify that on July 23, 2021, a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF System.

/s/Brenda Szydlo

Brenda Szydlo

DECLARATION OF BRENDA SZYDLO IN SUPPORT OF PLAINTIFF'S MOTIONS FOR (1) FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT; AND (2) ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARDS TO PLAINTIFF